GEER *et al.*, *Appellants*, v. MISSOURI LUMBER AND
MINING COMPANY *et al.*

134   85
152  324

134   85
91a 598

134   85
98a ²443

Division One, March 31, 1896.

1. **Deeds, Record of:** NOTICE: DESTRUCTION OF RECORD: REAL AND APPARENT OWNER: PURCHASER AT TAX SALE. Under Revised Statutes, 1889, section 2419, providing that deeds duly acknowledged, certified, and recorded "shall, from the time of filing the same with the re-

Geer v. Lumber and Mining Co.

corder for record impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed in law and equity to purchase with notice," the recording of a deed is notice, although the records were subsequently destroyed; and the purchaser at a tax sale under a judgment against the apparent owner of land will not be protected against the real owner, the record of whose deed was destroyed. Affirming *Crane v. Dameron*, 98 Mo. 567.

2. **Idem Sonans:** TAX SALE. The names "Leane" and "Lane" are not *idem sonans*, in the absence of evidence of similarity of pronunciation, and a tax sale under a judgment against "Lane" will not affect the interest of "Leane."

3. **Deed, Record of:** CONSTRUCTIVE NOTICE. The record of a deed in the county in which the land was located at the date of the execution of the deed, after the land had been attached to another county, does not constitute constructive notice thereof to subsequent purchasers.

4. **Deed, Acknowledgment of:** RECORD: NOTICE. An unacknowledged deed which has been recorded one year prior to 1887 imparts notice to all persons of its contents, and all subsequent purchasers are deemed to take with notice thereof. (R. S. 1889, sec. 4864.)

5. **Deed:** PROOF OF EXECUTION: PRESUMPTION OF GENUINENESS: EVIDENCE. A deed dated more than thirty years before its introduction in evidence, which had been recorded more than twenty-four years and was in the custody of the person claiming title through it, will be presumed to be genuine, where no objection was made to its introduction without proof of execution and there appeared nothing suspicious about it.

6. **Deed:** IDENTITY OF NAME AND PERSON: RESIDENCE. Identity of name of a grantee in a patent and of a grantor in a subsequent deed to the same land is *prima facie* evidence of identity of person, although the recitals as to residence are different.

7. **Evidence:** SIGNATURE: STANDARD OF COMPARISON: PHOTOLITHOGRAPHIC COPY. A photolithographic copy of a person's signature, the original of which can not be produced, is inadmissible to prove the genuineness of a signature to another instrument purporting to be that of the same person, in the absence of proof that the copy is exact and accurate in all respects, and the affidavit of the officer who has custody of the original as a record that the copy "is a true and literal exemplification of the original," is insufficient.

*Appeal from Shannon Circuit Court.*—HON. W. N. EVANS, Judge.

AFFIRMED.

*L. B. Woodside* for appellants.

(1) The court erred in excluding the photographic copies of the affidavits of Michael Leane, William K. Annis, James Beard, William Murphy, which were made by those parties as a foundation for the entries of the different tracts of land in controversy. *State v. Clinton*, 67 Mo. 384; 1 Greenlf. on Ev. [12 Ed.], p. 27, sec. 21, p. 614, sec. 570, p. 623, sec. 578, p. 625, sec. 580; Graduation Act, 1854. (2) If the original affidavits would have been admissible as standards of comparison, the photographic copies could properly be used in their stead, as they were papers which plaintiff could not produce in court. *Howard v. Russell*, 75 Tex. 571. Old writings containing signatures of parties thereto, which are found in proper depositories, are presumed to be genuine, and they or photographic copies may be used in court to prove the genuine signature of parties signing them. *Howard v. Russell, supra*. (3) Even if all the testimony offered by plaintiff to impeach the validity of the five deeds was incompetent, yet the court erred in instructing the jury that plaintiff could not recover under the evidence. They, however, contend that they can hold this tract without any deed from Leane, from the fact that the suit and judgment under which plaintiff claims title was against Michael Lane. If the name used in the tax proceedings is *idem sonans* with that of the owner of the land, the title will pass. *Wheeling v. Weaver*, 93 Mo. 430; *State v. Havley*, 21 Mo. 498. Where two names have the same derivation and are taken in common usage to be the same, though they differ in sound, the use of the one for the other is not a misnomer. *State v. Hutson*, 15 Mo. 512; *State v. Wilkerson*, 13 Mo. 91; *State v. Blankinship*, 21 Mo. 504. Two names are *idem sonans*, however their orthography may be, if the at-

tentive ear finds difficulty in distinguishing them when pronounced, or common and long continued usage, by corruption or abbreviation, made them identical in pronunciation. *Robson v. Thomas*, 55 Mo. 581. We are unable to find Michael Leane or any one who ever knew him, and, therefore, can not say how he pronounced his name, and can only refer the court to similar names with proper pronunciation. "McLean" is pronounced as though spelled "McLane." Webster's Unabridged Dictionary [Ed. 1876], Pronunciation of Modern Names; Ed. 1889, p. 1823. Neither Michael nor his grantees ought to be heard to say that "Leane" and "Lane" are not *idem sonans*. (4) Although the deeds were recorded after the land was attached to Shannon county and the record may not have been notice to purchasers, yet it was evidence of the transfer of the land. R. S. 1889, sec. 4869. Defendant's deed purporting to be made by Annis was not acknowledged. The want of acknowledgment may be cured by section 4864, Revised Statutes, 1889, in so far as to make it notice to purchasers, but said section does not make such a deed any evidence of a conveyance of title. Section 4865 expressly provides that such a deed shall not be received in evidence until the execution of the original shall be duly proved. Section 4864 was never intended to give validity to a paper which did not appear upon the records. (5) James Beard, of St. Louis county, Missouri, entered the land and in less than three months thereafter James Beard, of Sterling, Illinois, conveyed it, and it ought not to be presumed that the patentee and the grantor were the same person.

*Dinning & Byrns* for respondents.

(1) The deeds introduced by the defendants show title to the land in question in the Missouri Lumber

and Mining Company, and it has deeded to codefendant, the Ozark Lumber Company, since the commencement of this suit. The deeds read in evidence by plaintiffs conveyed no title to them. The deed from William K. Annis to Pettijohn, and the mean conveyances down to plaintiffs, were never recorded in Shannon county, and the record of these deeds in Oregon county was no notice to anybody. The deed from Beard to Anderson was recorded in 1873, long after the conveyance from Anderson to Auld; also the deed from Anderson to Onions was recorded long after the deed from Beard to Auld had been recorded. *Gwynn v. Frazier*, 33 Mo. 89. (2) Suit against Michael Lane for the collection of back taxes on lands entered by him did not affect the title to the land in controversy for two reasons: The word L-a-n-e can not be pronounced L-e-a-n-e. Webster, Worcester and the Century, in fact every dictionary that we have found, pronounce L-e-a-n, L-e-e-n, and the addition of "e" to this name would not cause it to be pronounced "L-a-n-e." (3) The court did not err in refusing to admit in evidence copies of affidavits purporting to have been made by the patentees. These are called "photolithographic" copies, but they are none the less a copy. There is no law authorizing the introduction of these copies for any purpose except to prove the contents of the original in a case where that would be relevant. They were sought to be introduced for the purpose of comparing the handwriting of the original deeds made by the patentees with the names as they appeared on the copies without any preliminary proof. *Blair v. Phelan*, 118 Mass. 421; *Com. v. Eastman*, 1 Cush. 207; *Spottiswood v. Weir*, 66 Cal. 525; *Cohen v. Teller*, 93 Pa. 123; *Ewing v. State*, 81 Tex. 172; 1 Whart. Ev., sec. 8120; *Taylor Will Case*, 10 Abb. Pr. (N. S.) 300; *Reddin v. Gates*, 52 Iowa, 210; *Eborn v. Zimpelman*,

42 Tex. 543; *Maclean v. Scripps*, 52 Mich. 214; *Hynes v. McDermott*, 82 N. Y. 41; *Miller v. Johnson*, 27 Md. 36; *Tome v. Parksburg*, 39 Md. 36; *Marcy v. Barnes*, 16 Gray, 160; Rogers on Expert Testimony [2 Ed.], sec. 140; 51 N. W. Rep. 1132; Lawson on Expert Ev., pp. 414, 415. (4) The deed from William E. Annis to Martin C. Auld was thirty years old, and had been of record twenty-three years, and was admissible without proof of its execution. Sec. 570, 1 Greenleaf. It came down to the last purchaser and was found in his possession, and therefore free from suspicion. The grantor in said deed is estopped from denying it. *Hoge v. Hubb*, 94 Mo. 489. (5) We assume that the question is settled in Missouri that a man does not lose title to his land because the record of his deed is burned. *Crane v. Dameron*, 98 Mo. 567.

MACFARLANE, J.—This is an action of ejectment to recover the following land situate in Shannon county: North half, section 8, township 26, range 3; east half, section 29, township 26, range 3; west half, section 9, township 26, range 3; east half, section 25, township 26, range 3; southeast quarter, section 8, township 26, range 3.

Plaintiffs claim title under deeds made by the sheriff of said county in 1881, under judgments for taxes. Defendants claim under deeds from the patentees of the land to one Auld. These last named deeds were dated in the sixties, and were recorded in Shannon county in 1870. It seems that after this the records of the county were burned and the deeds were not re-recorded until after the tax sales under which plaintiffs claim.

The suits for taxes upon three of those tracts were against the original patentees. The other two suits were against grantees of the patentees, under deeds

prior in date to those made to Auld, but one of them was recorded in Oregon instead of Shannon county, and the other was not recorded until after the deed to Auld to the same land had been recorded. Neither Auld nor his grantees were made parties to any of these suits. The township in which these lands were situated was formerly a part of Oregon county, but was detached therefrom and was added to Shannon county before the deeds under which plaintiffs claim were recorded.

Plaintiffs undertook to show that the deeds from the patentees to Auld under which defendants claim were forgeries. The papers offered in evidence from which to make comparisons with the signatures to the deeds were rejected by the court.

Plaintiff asked several instructions which were refused, and the court gave one at the request of defendants to the effect that under the pleadings and evidence the verdict should be for them. The judgment was for defendants and plaintiffs appealed. Other facts necessary to an understanding of the questions discussed will appear in the opinion.

I.   As shown in the statement the suits for taxes due upon three of the tracts of land were prosecuted against the original patentees. These patentees had previously conveyed the land to defendant's grantors by deeds which had been duly recorded in Shannon county, but prior to the institution of the tax suit the records of the county, including those containing a record of these deeds, were destroyed by fire, and the record had not been restored or the deeds re-recorded. So when the suits were commenced there was no existing record of a conveyance from the parties, who were made defendants. On this state of facts plaintiffs asked the court to give this declaration of law:

"2.   The court instructs the jury that in bringing suits for taxes, the collector was not required to make parties defendant any person whose deed had been recorded prior to said suit, if the record thereof was destroyed at the time of bringing the same, and had not been supplied or re-recorded at the time of said suit."

The refusal of this instruction is assigned as error.

Plaintiffs concede that the exact point was ruled against them in *Crane v. Dameron,* 98 Mo. 568, but they say the ruling absolutely "enables holders of land in those counties where the records have been destroyed to perpetually evade the payment of taxes," and should not therefore be followed.

This argument would doubtless have much force if addressed to the legislature with a view of securing an appropriate amendment to the law, but the courts can only interpret and apply the law as they find it. No provision is made under the revenue law for enforcing the payment of taxes except against the owner, or, if unknown, the one who is presumed to be the owner under the provisions of the registry laws of the state.   The statute provides that deeds duly acknowledged, certified, and recorded, "shall, from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed in law and equity to purchase with notice." These grantees had their deeds duly recorded and the collectors and purchasers at tax sales are conclusively presumed to have had notice thereof.   Any conclusion other than that reached in the *Crane* case would nullify these provisions of the registry act.

II.   The patent to one tract of the land gave the name of Michael Leane as the grantee.   The deed under which defendant claims from the patentee is

signed by Michael Leone, and the tax proceeding was against Michael Lane. Plaintiffs insist that the identity of the patentee and the grantor was not sufficiently established to authorize the admission of the deed as evidence of a conveyance from the original purchaser from the United States. In answer, defendants say that the name L-a-n-e, is not *idem sonans* with the name L-e-a-n-e, and the judgment and sheriff's deed are insufficient to pass the title of Michael Leane.

We are of the opinion that defendants are right, and that the names Leane and Lane do not have such a similarity of sound when pronounced that a difference would not be observed by an attentive ear. The vowels e-a before the consonant n, is generally given the sound of e long or e-e, as dean, and lean, when used as an adjective or a verb. *Leen* and *Lane* do not sound at all alike, and it was not shown that by common usage a different pronunciation is given the word Leane when used as a proper name. The addition of the letter e to the word lean, would not change the sound ordinarily given to the letters ea in lean.

The sheriff's deed only conveyed the interest in the land held by the defendants in the suit, and the interest of Michael Leane therein was not affected by this judgment, sale, and deed. *Whelen v. Weaver*, 93 Mo. 432.

III. One tract of land was entered by one William B. Annis. . During the time the land was located in Oregon county the patentee conveyed it to Pettijohn, and the latter conveyed it to L. G. Marshall against whom the tax suit was prosecuted. After the township including this land had been transferred to Shannon county the deeds were recorded in Oregon county. They were not recorded in Shannon county. The deed from Annis to Auld under which defendants claim title, while subsequent in date to the one to Pettijohn, was recorded in Shannon county in 1870. A record

of the deed in Oregon county when the land was located in Shannon county imparted no constructive notice thereof to subsequent purchasers from Annis, and Auld having no actual notice of the conveyance to Pettijohn acquired the title of the grantor as against the prior deed. *Gwynn v. Frazier*, 33 Mo. 90.

But it appears that the commission as notary public of the person who took the acknowledgment of the deed from Annis to Auld had previously expired, and it is insisted that the deed was not properly acknowledged and certified, and was therefore improperly recorded, and was not admissible in evidence without proof of execution.

The acknowledgment of a deed is not necessary to its validity. It only dispenses with the proof of execution, and entitles the deed to go upon the record.

The want of acknowledgment in these particulars is cured by the statute. An unacknowledged deed which has in fact been recorded one year prior to 1887 is made to impart notice to all persons of its contents and all subsequent purchasers are deemed to purchase with notice thereof. R. S. 1879, sec. 2305; Laws of 1887, p. 183; R. S. 1889, sec. 4864.

The deed from Annis to Auld was recorded in 1870, and by the terms of the statute imparted notice to subsequent purchasers. The deed was dated July 2, 1863, which was more than thirty years before its introduction in evidence. It had been recorded about twenty-four years and was in the custody of defendant who claims title through it under Auld. No objection was made to its introduction in evidence, without proof of its execution, and there appeared to be nothing suspicious about it. In the circumstances we should presume the deed to be genuine. *Long v. McDow*, 87 Mo. 201.

IV.   One tract of the land was entered by James Beard, who, as shown by the patent, was a resident of St. Louis county.   On April 18, 1861, he conveyed to Anderson and the deed was recorded in 1873.   Anderson conveyed to Onions who was made a defendant in the tax proceedings.   Defendant claims through a deed from James Beard to Auld, which was dated July 10, 1861, and recorded in 1870.   In this deed the residence of Beard is given as of Sterling, Illinois.   It is now insisted that, on account of the difference in residence, the deed to Auld was not *prima facie* evidence of the identity of the grantor and the patentee.

We do not think there is any force in this contention.   The name of the grantee under the patent and of the grantor in the deed to Auld are the same and the land conveyed in the patent and the deed is identical. The residences of persons are often changed and a declaration thereof in a deed might be entirely omitted without affecting in the least its authenticity. After the lapse of thirty years it might be and often would be impossible to prove the identity of the grantor with grantee in a former deed.   We think, therefore, the practical rule should be that when the names of the grantor and grantee are the same and the land conveyed is identical, the proof of identity is *prima facie* sufficient.   *Mosely v. Reily*, 126 Mo. 129.

V.   In order to defeat defendant's title plaintiff undertook to prove that the deeds read in evidence, purporting to have been made by the patentees to Martin C. Auld, were in fact forgeries.

The entries of these lands were made under the graduation act of congress for actual settlement and occupation.   In order to make the entry it was necessary for the applicant to file with the register of lands an affidavit that the entry was made for actual settle-

ment and cultivation.   These affidavits are now on file in the department of the interior at Washington City.

In order to establish a standard for comparing the handwriting of the grantors in the deeds to Auld, with the true handwriting of the patentees plaintiffs offered in evidence photo-lithographic copies of these affidavits with the signatures of affiants thereto.   To these copies were attached the certificate of the commissioner of the general land office as follows:

"DEPARTMENT OF THE INTERIOR.
"General Land Office.
"WASHINGTON, D. C., January 19, 1894.

"I, S. W. Lamoreux, commissioner of the general land office, do hereby certify that the annexed photo-lithographic copy of the affidavit of Michael Leane, same size as the original, filed with Jackson, Missouri, cash entry, No. 32881, is a true and literal exemplification of the original on file in this office.

"In testimony whereof, I have hereunto subscribed my name and caused the seal of this office to be affixed at the city of Washington, the day and year above written.

[SEAL]                     "S. W. LAMOREUX,
"Commissioner of the General Land Office."

On objection by defendants these copies were held inadmissible for the purpose for which they were offered.

It is well settled law in this state that writings can only be used as standards with which to compare a disputed handwriting when no collateral issue can be raised in respect to their genuineness.   They are generally allowed only when admitted to be genuine, or when their genuineness is established in the cause. *Rose v. Bank,* 91 Mo. 402; *Randolph v. Loughlin,* 48 N. Y. 456.

Ordinarily the original itself is used and it has been held that copies, either by tracing or produced by a press or machine, however correct they may be, can not be used as standards. *Com. v. Eastman*, 1 Cush. 189; *Spottiswood v. Weir*, 66 Cal. 529; *Cohen v. Teller*, 93 Pa. St. 128.

But it is said that the original affidavit was on file in the interior department at Washington, and could not be produced at the trial, and the art of photography and lithographing is so perfect that a photolithographic copy of the writing is an exact representation of the original, and should be admitted from the necessity of the case.

It is unquestioned that a very close imitation of an object can be obtained by photography, but it is not a fact of which judicial knowledge may be taken that "all the appearances of a written document are capable of such exact reproduction that the copy will fully represent the original." *Maclean v. Scripps*, 52 Mich. 219.

Without determining whether such a copy, the original of which would be admissible as a standard, and could not be produced, could be substituted, we are satisfied it could not be done unless preliminary proof was first made that the copy was exact and accurate in all respects. There was no such proof as preliminary to the introduction of this copy. The officer merely certifies that the copy is of the same size and "is a true and literal exemplification of the original." This certificate might have been made to a written copy as well as to this one.

The perfection of a photograph depends upon many circumstances and conditions, such as skill of the operator, the correctness of the lenses, "the purity of the chemicals, the accuracy of the focusing, the angle at which the original to be copied was inclined to the

sensitive plate, etc.''  *Taylor Will Case*, 10 Abb. Pr. (N. S.) 300.

The slightest defect or imperfection in the photography or lithographing would destroy the sufficiency of the copy as a standard for the comparison.  Opinions are often formed on the slightest strokes of the pen or the most delicate shading of the letters.  "The certainty of expert testimony in these cases is not so well assured as that we can afford to let in the hazard of errors or differences in copying, though it be done by howsoever a scientific process.  Besides, as before said, there was no proof here of the manner and exactness of the photographic method used.''  *Hynes v. McDermott*, 82 N. Y. 51.

The court did not err in excluding the copies as standards of comparison.

Finding no error in the record the judgment is affirmed.  BRACE, C. J., and ROBINSON, J., concur. BARCLAY, J., concurs in all paragraphs except two and concurs in the result.