STELLA SMART, Respondent, v. KANSAS CITY, Appellant.

Kansas City Court of Appeals, January 20, 1902.

1. **Negligence:** APPROXIMATE CAUSE: OPINION OF EXPERT: FALSE HYPOTHESIS. The opinion of a physician based upon hypothetical facts of which he has no knowledge, may be given in evidence; but if the matters assumed are not true, the opinion is worthless and can not be stated.

2. ———: ———: TWO CAUSES: BURDEN OF PROOF. If the injury may have resulted from either of two causes for one of which, and not for the other, the defendant is liable, plaintiff must show with reasonable certainty that the cause for which defendant is liable produced the result; and if the evidence leaves it to conjecture, the plaintiff fails; especially is this so where witnesses who appear know the facts, are accessible and uncalled.

3. **Negligence:** DEFECT IN SIDEWALK: EVIDENCE OF OTHER ACCIDENTS. Evidence of accidents to other persons at the same place, and which were caused by the same defect, can not be admitted in behalf of plaintiff in an action for personal injury caused by a defect in a sidewalk. Golden v. Railway, 84 Mo. App. 59, distinguished.

4. **Witnesses:** PHYSICIAN: PRIVILEGED COMMUNICATIONS: NON-COMMUNICATION. In an action for personal injury, the

physician of the plaintiff can not testify that the plaintiff did not communicate to him the accident as a cause of her ailment since information is not confined to communication and may be inferred from silence.

5. ———: ———: ———: EXAMINATION OF AMPUTATED LIMB. In an action for personal injury, resulting in the amputation of a leg, an attending surgeon can not testify to the result of his observation and examination of the amputated member subsequent to the operation.

6. ———: ———: ———: NON-WAIVER. Plaintiff while a witness in her own behalf made some observation as to what her physician stated was the condition of her limb before amputation. This observation was not in answer to the question asked. The defendant objected and plaintiff's attorney disclaimed the answer by telling her what the doctor said was not good evidence. *Held,* the privilege was not waived and defendant was not entitled to the testimony of the physician.

7. **Negligence:** CONTRIBUTORY NEGLIGENCE: DEFECT IN SIDEWALK: CRIPPLED TRAVELER: INSTRUCTION. Where the nature of a defect in a sidewalk is such that the jury may find that an accident was more liable to happen to a lame pedestrian than to a person not lame, the jury should be told that a lame person should use more care than one in normal bodily condition.

8. **Evidence:** PHOTOGRAPHS: IDENTIFICATION. Photographs are legitimate evidence, but it must be shown that they are photographs of the place in question.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

REVERSED AND REMANDED.

*Gage, Ladd & Small* for appellant.

(1) Defendant's refused instructions, Nos. 11 and 14, ought to have been given, and all the instructions given on behalf of plaintiff, which permitted the jury to allow her damages for the loss of her limb, ought to have been refused. Cotton v. Wood, 8 C. B. (N. S.) 568; Bond v. Smith, 113 N. Y. 378; Pauley v. Steam Gauge Co., 131 N. Y. 90; Link-

Smart v. Kansas City.

hauf v. Lombard, 137 N. Y. 417; Laidlaw v. Sage, 158 N. Y. 73; Searles v. Railroad, 101 N. Y. 662; Smith v. Bank, 99 Mass. 605; Reed v. Railroad, 50 Mo. App. 504; Smillie v. Dollar Store, 47 Mo. App. 406; Pierce v. Michel, 60 Mo. App. 187; Railroad v. MacLaury, 107 Fed. Rep. 644; Cass Co. v. Green, 66 Mo. 498; Baldwin v. Whitcomb, 71 Mo. 651; Leeper v. Bates, 85 Mo. 224; Ins. Co. v. Smith, 117 Mo. 261. (2) Defendant's refused instruction No. 16 ought to have been given. But the evidence shows that for years the plaintiff was so disabled by her affliction, that she walked with great pain and difficulty, with the aid of a cane or crutches, that her knee was weak, and that therefore she was more liable to stumble or fall upon inequalities in the walk than she would have been had she not been a cripple. Laboring under such an infirmity, and in consequence thereof all the more exposed to injury, it was her duty knowing all this, to exercise care commensurate with her abnormal liability to injury. The proposition of law embodied in the refused instruction, is well settled. Purl v. Railroad, 72 Mo. 168; Stepp v. Railroad, 85 Mo. 229; Fusili v. Railroad, 45 Mo. App. 535; Winn v. City of Lowell, 1 Allen 177; Railroad v. Terry, 8 Ohio St. 570. (3) The evidence of witness Burrough as to an injury sustained by himself, ought to have been excluded. Goble v. Kansas City, 148 Mo. 470. (4) Dr. Lapp ought to have been permitted to testify as to the condition of plaintiff's knee. Rauh v. Deutscher Verein, 29 App. Div. (N. Y.) 483; s. c., 51 N. Y. Supp. 985; Railroad v. Hill, 115 Ala. 334; Webb v. Railroad, 89 Mo. App. 604. (5) It was error to exclude the testimony of Dr. Lapp and Dr. Stanley, to the effect that before the amputation, and while she was under their treatment, plaintiff did not communicate to either of them the fact that she had suffered a fall. (6) It was error to exclude the testimony of Dr. Coffin and Dr. Lane offered by the de-

fendant, as to the condition of the knee after the amputation.

*R. B. Middlebrook* also for appellant.

This case owed its standing before the jury largely to the photograph exhibited by the plaintiff, taken long after the alleged accident. This picture was never identified or proved as having been taken by any qualified or experienced photographer. Its authenticity in this respect was never attempted to be established or sustained. Hynes v. McDermott, 82 N. Y. 51; Baustian v. Young, 152 Mo. 317, and cases cited; Geer v. Lumber Co., 134 Mo. 85.

*Henry J. Latshaw, Jr.,* for respondent.

(1) No objection whatsoever, in any manner or form, was made to this photograph at the trial, and no exceptions raised to its introduction or use during the trial. They can not first object to it in this court. Authorities are not necessary upon this proposition. (2) In the first place, this testimony was brought out entirely by defendant upon cross-examination, and it was allowed by the court for that reason, together with the additional reason that it was merely for the purpose of establishing the correctness of the witness's testimony in regard to the time when he first knew the coalhole was out of condition. Under these conditions the case of Goble v. Kansas City, 148 Mo. 470, does not apply. Moreover, defendant asked this same witness directly and pointedly again this same question. (3) The next contention of appellant, is that the physicians who treated plaintiff before her fall upon the coal-hole, and after that, should have been allowed to testify to their knowledge of the condition of plaintiff, and what she said to them upon certain occasions while acting as her physicians. All this testimony was incompetent,

since plaintiff objected to allowing it. Streeter v. Brecken-ridge, 23 Mo. App. 244; Kling v. Kansas City, 27 Mo. App. 231; James v. Kansas City, 85 Mo. App. 20, and cases there cited; Weitz v. Mound City, 53 Mo. App. 39. Defendant next objects that instructions numbered 11 and 14 asked by defendant should have been given. Both these instructions declare practically the same thing, namely, that there was no evidence in the case that the injury received by plaintiff on the coal-hole made it necessary to amputate her limb. We contend that the evidence very clearly and positively did show that the fall on the coal-hole was the direct and moving cause for the amputation of the limb, therefore, those instructions were properly refused. Defendant next contends that in-struction number 16, offered by defendant, should have been given. This instruction declares that even though the side-walk was not reasonably safe at the time and place of plain-tiff's injury, yet if the jury believed that plaintiff had a lame or diseased knee, and that such lameness or weakness ren-dered her more liable to stumble or fall in walking, then it became plaintiff's duty to exercise a greater degree of care to avoid accidents, and that if she failed to exercise such greater degree, and that her failure to exercise the same contributed to her fall, then the jury should find for defendant. The court will notice that this instruction does not state that the jury is to find for defendant, if her failure to exercise said greater degree of care caused her to fall, nor does it say whether the lack of said greater degree of care must directly contribute, nor words to that effect, but may mean either in-directly or remotely; but we will waive this technical objec-tion for the present, and assume that the instruction says that the lack of said greater degree of care caused plaintiff to fall, or directly contributed to plaintiff's fall, even then, the in-struction should not have been given. Easley v. Railroad, 113 Mo. 236; Candee v. Railroad, 130 Mo. 142; Purl v. Railroad, 72 Mo. 168; Zimmerman v. Railroad, 71 Mo. 476;

Wright v. Kansas City, 18 Mo. App. 436; Sherwood v. Railroad, 132 Mo. 339; Buck v. Railroad, 108 Mo. 179; Caton v. Sedalia, 62 Mo. App. 227.

ELLISON, J.—This action is for personal injury, caused to plaintiff by reason of her falling on one of defendant's sidewalks. The cause of the fall is alleged to be a defective iron covering to an opening made in the sidewalk for the purpose of getting coal into the basement of an abutting building, whereby she stumbled and fell. The particular injury claimed as a result of the fall was a fracture of the right knee which resulted in the amputation of her leg about seven weeks thereafter. The judgment in the trial court was for plaintiff.

I. It is contended by defendant's counsel that there was no evidence in the cause connecting the amputation of plaintiff's leg with her fall on the walk. On this question, the record shows that the accident happened on the twenty-sixth of February, 1899. That for several years prior thereto plaintiff had been afflicted with tuberculosis in her right knee. That she had been in the city hospitals of Kansas City, Kansas, and Kansas City, Missouri, on that account several different times (sometimes remaining for a number of months), where she was treated for that disease by the city physician and examined by several surgeons attending on the hospitals; and at one time while there, in 1894, her knee was operated upon. That in consequence of this disease she was very lame. Her last discharge from the hospital, before the accident, was in September, 1898. She was still lame at the time of the accident. In short, there was much evidence at the trial tending to show that the amputation was made necessary by the disease of the knee. The only evidence connecting the amputation with the accident was the opinion stated by a physician in answer to a hypothetical question of plaintiff's counsel. He stated in answer to that question that the injury

made the amputation necessary. But while the opinion of a physician based upon a hypothetical state of facts of which he has no knowledge himself, may be given in evidence in proof of the ultimate fact in question; yet if the matters assumed in the question to be facts are not true, the opinion is, of course, worthless, for the simple reason that it is based on a false assumption. In this case much of the material matter assumed in the question which elicited the physician's opinion, turned out not to be true. The question assumed as true that for two years before the accident plaintiff "had the absolute, normal and free use of her limb." The whole of the testimony for either party including that of plaintiff herself, showed that assumption to be untrue. So it was assumed in the question that immediately after the accident plaintiff was taken to a room and her leg examined by a doctor who found a dislocated and fractured knee cap. There was nothing upon which to base this. She was examined by a woman who stated she was not a doctor and that she could not tell whether there was a fracture. There were perhaps other assumptions not justified by the facts, but those mentioned will suffice to destroy all probative force of the physician's opinion.

There was, then, no evidence connecting the injury with the amputation of the leg. But it may be truly said that a condition of injury may exist which, when shown, certain results may be inferred as flowing from it. But in this case, allowing, to the limit, the rule of legitimate inference of consequences following an injury, the most that can be said for plaintiff is that the whole evidence, taken together, shows that the amputation resulted either from the injury received by the fall, or from the diseased knee. Which of these two conditions was the cause can be only a matter of conjecture. When the injury complained of may have resulted from either of two causes, for one of which the party sued is liable and the other he is not, it is for the plaintiff to show with reasonable certainty that the cause for which the party is liable

produced the result. Searles v. Railroad, 101 N. Y. 661; Cotton v. Wood, 8 C. B. (N. S.) 568. If the state of the evidence is such as to leave it to be determined only by conjecture or surmise, the plaintiff must fail. Bond v. Smith, 113 N. Y. 378; Pauley v. Steam Co., 131 N. Y. 90; Linkhauf v. Lombard, 137 N. Y. 417.

The Supreme Court of Massachusetts used the following language in disposing of a similar question: "There being several inferences deducible from the facts which appear, and equally consistent with all those facts, the plaintiff has not maintained the proposition upon which alone he would be entitled to recover. There is strictly no evidence to warrant a jury in finding that the loss was occasioned by negligence and not by theft. When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof. A verdict in favor of the party bound to maintain one of those propositions against the other, is necessarily wrong." Smith v. First Nat'l Bank, 99 Mass. 605, 612.

So in the same line is the language of Judge ROMBAUER in Smillie v. St. Bernard Dollar Store, 47 Mo. App. 406, viz.: "That the evidence of such a connection may rest upon inference, we freely admit; but as we have repeatedly said, there is a wide difference between legitimate inference and bare conjecture. The mere concurrence in time of two facts does not legitimately give rise to the inference that one is the result of the other."

It was, therefore, error to give plaintiff's instructions which permitted the jury to consider the fact that plaintiff's leg was amputated. It is proper to state further that the record shows this not to be one of those cases where ample and direct evidence on a necessary issue, or subject, could not be had. It appears that several surgeons assisted in the amputation and had theretofore examined plaintiff's knee. These

perhaps know the cause of the condition which made the amputation necessary. They are accessible, and in such case there is no good reason why the case should be left so uncertain as to require conjecture to reach a conclusion.

II. A witness was permitted to testify that he had fallen over the same defect in the sidewalk, complained of by plaintiff. It has been determined by the Supreme Court that evidence of accidents to other persons at the same place, and caused by the same defect, could not be heard in support of the complaining party's case. Goble v. Kansas City, 148 Mo. 470. It was therefore error to admit the evidence.

In Golden v. Railroad, 84 Mo. App. 59, we held that where lumber piled in the highway near the traveled track had frightened the horses attached to a vehicle in which plaintiff was riding, so that they ran away and injured her, it might be shown that other gentle horses had taken fright at the same object. That case is distinguishable from the one at bar and the Goble case, supra. The question in that case was whether the lumber, situated as it was, was an object likely to frighten horses, and we held that the fact that it did frighten horses was good evidence on that head. We likened the case to those in this State where the question was whether a particular engine had set fire to the complaining party's property and it was held proper to show that that engine set other fires on the same trip. Patten v. Railroad, 87 Mo. 117; Campbell v. Railroad, 121 Mo. 348. But in cases like this and the Goble case, the question is not so much whether a defect is such as that one could fall over it, as it is whether in the *particular* instance complained of, the injured party would have fallen over it if exercising ordinary care *in the particular circumstances in which he was placed.* The fact that a man falls on a sidewalk shows that he can fall there, but it does not show any of several other conditions necessary to make a case against the municipality. It thus leads to an

investigation of a number of collateral issues which should, when possible, be avoided.

III.    There were several questions asked of physicians, who attended plaintiff in a professional capacity, which raise important legal questions of evidence.    In order to support defendant's theory that the hurt from the fall on the sidewalk did not cause the amputation, two of the physicians who waited upon her for several weeks before the amputation, were asked questions designed to show that she never mentioned to them the fall on the sidewalk.    The offer of this testimony was objected to by plaintiff and rejected by the court.    Defendant insists that this was not a communication from the patient to the physician, but was, on the other hand, evidence that there was *no* communication and was thereby not covered by the statute.    The statute (section 4659, Revised Statutes 1899) reads that a physician and surgeon shall not testify "concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon."    It will be observed that the statute does not use the word, "communication;" the statutory word is, "information."    It is knowledge common to every one, but especially acted upon by physicians, that information may be had by lack of communication; and in many instances it is acted upon as if there was an affirmative statement.    A physician hearing no complaint or statement as to certain feeling, or pain, or other condition of his patient, must assume that it does not exist; he thereby gains "information" that it does not exist. The effort made by defendant to show as a fact that no complaint of the fall was made, was, of course, that the jury might be informed that, in all probability, no injury resulted from the fall.    In other words, defendant wanted to convey to the jury the information which the doctor received through the

silence of his patient. Information is not confined to communications. Briggs v. Briggs, 20 Mich. 34.

And so it has been ruled in this State that the information mentioned in the statute may come from observation. Gartside v. Insurance, 76 Mo. 446; Streeter v. City of Breckinridge, 23 Mo. App. 244. The court properly rejected the evidence.

IV. Defendant also sought to show by one of plaintiff's attending surgeons that three or four days after he assisted in amputating the leg he took the bone out of the severed part, examined it and found that there was no fracture of the knee cap. The offer to show this was refused by the court on plaintiff's objection. Defendant insists that this was not information obtained while attending the plaintiff—that the services of the surgeon had ended and that necessarily the information he obtained by that examination was not for the purpose of enabling him to decide on the necessity of amputation.

It is true that separate and distinct information of a physician or surgeon, obtained after his relation to the patient has ceased, is not within the statute (People v. Koerner, 154 N. Y. 355). But the evidence sought to be introduced by defendant was a part of, and a continuation of, the information which her surgeon received while his professional relationship existed. It was the result of continued observation from the time when the leg was yet a part of plaintiff's body and he was deciding whether it was necessary to amputate, to the time when it had become actually separated. The question whether there was a fracture was a matter of opinion before severing, and it became a matter of demonstration after severing. Furthermore, the information which the witness obtained from plaintiff's leg, though severed from her body, was, in the meaning of the statute, information obtained from her, by observation and examination. Can a physician or surgeon be permitted to take a discharge of his patient's blood

or urine, and after the professional attendance ceases, tell, what he learns therefrom against the wish of his former patient? Surely not. A physician can not be permitted to use the means which he obtains in his professional capacity to gain information after that capacity ceases for the use of the courts or the public. The object of the statute is to encourage the utmost confidence on the part of the patient so that he may, without fear, disclose all, or permit all to be disclosed which is necessary for the physician to know. To establish defendant's contention as a rule of evidence, would, in great part, destroy such object. The ruling was proper.

V. Defendant called another of plaintiff's physicians and asked him what was the condition of plaintiff's knee as he found it after the fall. The question was not allowed by the court. Defendant bases its claim to this evidence on the ground that plaintiff had testified to what the physician had stated to her was the condition of the knee and thereby had estopped herself from claiming the privilege of the statute under the case of Webb v. Railroad, 89 Mo. App. 604. But the difficulty with defendant's position is that what plaintiff said as to the statement of the physician was not in answer to a question. Her statement was objected to by defendant and the answer was disclaimed by plaintiff's attorney by telling her that "what the doctor said was not good evidence." Defendant's counsel seemed then to be satisfied, as nothing further was said by him and no ruling asked of the court.

VI. As has been stated, the evidence in behalf of plaintiff tended to show that the defect in the walk was caused by defective condition of the coal-hole so that the lid and the metal upon which it rested stuck up above the walk near six inches. And, as has been already stated there was evidence tending to show that plaintiff was quite lame. In this condition of the case, defendant asked an instruction which in effect informed the jury that in such circumstances plaintiff was required to use a greater degree of care in proportion to her bodily infirmity than if she had not been lame, and that

if she did not use such care and that fact contributed directly to her fall, she should not recover. It is clear that if the nature of the accident is such that it is more likely to happen to a crippled person than to one not crippled, the former should be more careful than the latter. That is to say an act which would be ordinary care in a person with sound legs, might be rash imprudence in one who is crippled. But accidents resulting from defective streets may be such as that a crippled condition could not have contributed thereto. Thus, an open excavation in a sidewalk is avoided as well by the eye of the unsound man as it is by the eye of one who is sound; and, therefore, the measure of care may be the same in each. We conclude, then, that if the triers of the fact believed the nature of the defect in question here was such as would more likely cause an accident to a person traveling the street and lame as plaintiff was, than it would to a person not lame, then they should require more care from plaintiff than from a person in normal bodily condition, and an instruction embodying the idea here suggested should be given. Winn v. City of Lowell, 1 Allen 177; Railroad v. Terry, 8 Ohio St. 570; Purl v. Railroad, 72 Mo. 168; Stepp v. Railroad, 85 Mo. 229; Fusili v. Railroad, 45 Mo. App. 535.

VII. Certain photographs of the part of the sidewalk in controversy and its surroundings were introduced in evidence and were used by plaintiff in the examination of witnesses. Defendant contends that this was not proper for the reason that it was not shown when they were taken, or by whom, or whether they correctly represented the place. Photographs are recognized as legitimate evidence, but, of course there must be something, *aliunde*, to show that they are photographs of the place. Baustian v. Young, 152 Mo. 317; Geer v. Lumber Co., 134 Mo. 85; Hunes v. McDermott, 82 N. Y. 41. They do not prove themselves.

Plaintiff does not concede defendant's right to make this point for the reason that no objection was made thereto at the

trial. But since the case is to be retried for other reasons, it is well enough to say what we have in reference thereto.

The judgment will be reversed and the cause remanded. All concur.