CONRAD LAUFF, Respondent, v. J. KENNARD & SONS CARPET COMPANY, Appellant.

St. Louis Court of Appeals, December 8, 1914.

1. NEGLIGENCE: Driving Team: Duty of Driver. A driver of a team, who was delivering goods to a freight platform, about which there were many persons, was guilty of negligence in backing his wagon with great force against the platform, without looking to see that no one was about or giving warning that he was going to back.

2. ———: ———: Injury to Pedestrian: Physical Facts: "Second." In an action for injuries sustained by being struck by a backing wagon at a freight platform, evidence by plaintiff that, after seeing defendant's wagon being driven forward, he entered a space between two wagons, to mount the platform, and, a second later, was struck by defendant's wagon, which was backed into the space, was not subject to condemnation as being improbable nor as contrary to the physical facts because of the use of the word "second," since that term was used to express a short interval of time, and not in its precise sense.

3. ———: ———: ———: Contributory Negligence. In an action for injuries sustained by being struck by a backing wagon at a freight platform, plaintiff testified that, after seeing defendant's wagon being driven forward, he entered a space between two wagons, to mount the platform, and, a second later, was struck by defendant's wagon, which was backed into the space. *Held*, that it does not conclusively appear from this evidence that plaintiff tarried in the face of a known danger, and hence the question of whether he was guilty of contributory negligence was for the jury.

4. EVIDENCE: Photographs. Although photographs which are properly identified and are shown to represent the situation as witnesses saw it are not to be received as evidence of the facts, they are nevertheless admissible as illustrations of the testimony, and this is true even though the situation that existed at the time the photographs were taken was not in all respects precisely as it was at the time of the occurrence in controversy.

5. APPELLATE PRACTICE: Exclusion of Evidence: Harmless Error. The improper exclusion, in an action for personal injuries, of photographs of the place of injury was harmless, where the facts and location of the place were so thoroughly described in evidence that the jury were apprised of all the facts they could have discovered from the photographs.

6. NEGLIGENCE: Pleading: Instructions: Necessity of Submitting Specific Negligence. Where, in an action for personal injuries, the petition contains specific assignments, as well as a general charge, of negligence, a recovery can be had under the specific assignments only; and even though the petition contains a general charge only, the instructions submitting the question of negligence must require a finding of the particular acts of negligence revealed by the evidence.

7. ———: ———: ———: ———. Where, in an action for personal injuries, the petition charged that defendant's servant, who backed a wagon against him, was negligent in failing to look out for or warn plaintiff, an instruction authorizing a verdict for plaintiff if defendant's servant did not exercise ordinary care was erroneous, for the reason that it did not confine the recovery to the negligence specified.

8. ———: Driving Team: Injury to Pedestrian: Grounds of Recovery. The fact that a delivery wagon which backed against and injured plaintiff at a freight platform could have been driven to another place to deliver the goods it carried, furnished no ground of recovery, in an action for the injuries thus sustained.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

REVERSED AND REMANDED.

*Smith & Pearcy* for appellant.

(1) The court should have sustained the demurrer offered by the defendant at the close of the entire cse, as the evidence does not show any ngligence on the part of the defendant, and for this reason this cause should be reversed without remanding. Plaintiff's evidence is against reason, and the physical facts show it to be untrue, and cannot sustain this action. Daniels v. Railroad, 177 Mo. App. 280; Scroggins v. Railroad, 138 Mo. App. 215; Phippin v. Railroad, 196 Mo. 343. However if admitted as possible and true, the evidence under the law does not show any negligence on the part of the defendant. Hitz v. Railroad, 152 Mo. App. 687; Lobach v. Railroad, 172 Mo. 278. It was perfectly plain and obvious to plaintiff at the time that he walked into the space where he was struck what the defendant's driver was attempting to do, and no negligence of the defendant can be inferred from these facts. Where the whole case shows no negligence the court should determine the whole case as a question of law. Boland v. Railroad, 36 Mo. 484; Cogan v. Railroad, 101 Mo. App. 188; Hight v. Bakery Co., 168 Mo. App. 431. (2) As a matter of law, the plaintiff was guilty of such negligence in walking behind the wagon at the time that it was being backed, as to bar his recovery. The plaintiff's evidence cannot be true, as it is opposed to the physical facts and the defendant's evidence shows such facts as to bar the plaintiff on account of his own negligence in passing behind the wagon while it was being backed. But if plaintiff's evidence be true it shows that the plaintiff was guilty of negli-

gence in not keeping a lookout, as there was a duty upon him, while in the driveway for the use of wagons. Hitz v. Railroad, 152 Mo. App. 687; Hight v. Bakery Co., 168 Mo. App. 431. (3) The court committed error in excluding the defendant's photographs marked Exhibits 1, 2, 3, 4, 5 and 6. These photographs are shown by the evidence to correctly represent the situation at the point of the accident at the time that it occurred, and should have been admitted in evidence for the proper instruction of the jury as to the place of the accident. 1 Wigmore on Evidence, p. 899; Dederichs v. Railroad, 14 Utah, 137; People v. Buddensieck, 103 N. Y. 487; Smith v. Railroad, 80 Vt. 208; Threlkeld v. Railroad, 68 Mo. App. 127; Dean v. Railroad, 229 Mo. 446; Davidson v. Railroad, 164 Mo. App. 701. (4) The court committed error in admitting the evidence over the objection of defendant that the defendant's driver could have delivered the freight on his wagon intended for the Big Four and Vandalia Railroads to other places than through the central driveway. (5) The court committed error in giving the instruction for the plaintiff numbered 1. This instruction authorizes a recovery if the driver did not use ordinary care. The petition counts on specific acts of negligence while this instruction authorizes a recovery on general negligence. Barnett v. Paper Mill Co. 149 Mo. App. 498; Clark v. Motor Co., 177 Mo. App. 623; Davidson v. St. Louis Transit Co., 211 Mo. 320; McCarthy v. Rood Hotel Co., 114 Mo. 397; 6 Thompson on Negligence (1905), sec. 7452, p. 493; Crone v. Oil Co., 176 Mo. App. 344.

*George V. Reynolds* for respondent.

(1) Werremeyer saw Lauff, or could have seen him by the exercise of ordinary care in time to have prevented the accident; it was therefore culpable negligence for him to fail to do so. Gulick v. Clark, 51

Mo. App. 26. One who drives a vehicle through a crowded thoroughfare in a city is under the duty of being constantly watchful to avoid collisions with persons lawfully on the streets. (2) The rule of law' as to the degree of care and the duties of footmen and the drivers of vehicles is, that it must be such care as would be ordinarily taken by prudent persons similarly situated. Jennings v. Schwab, 64 Mo. App. 13; Dieter v. Zbaren, 81 Mo. App. 612. This is what plaintiff's instructions told the jury. (3) Driving a team of horses at a rapid gait into a narrow space where people are standing in plain view of the driver is prima-facie evidence of negligence and the statement of such negligence is a specification of acts of negligence. Thompson v. Livery Co., 214 Mo. 487. Where a driver of one of defendant's wagons hitched his horses thereto and, without looking to see whether any one was in a position of danger, and without warning, started the team and ran over plaintiff, a coemployee who was working beside the wagon with one of his legs extending in front of the back wheel, negligence in the employer was shown sufficient to warrant a recovery. Tayng v. Mount Shasta Mineral Spring Co., 135 Cal. 141. (4) Photographs are recognized as legitimate evidence, but, of course, there must be something aliunde to show that they are photographs of the place. Baustian v. Young, 152 Mo. 317; Gear v. Lumber Co., 134 Mo. 85; Hunes v. McDermott, 82 N. Y. 41. They do not prove themselves. Smart v. Kansas City, 91 Mo. App. 586. If they do not for any reason appear to represent the subject or the conditions existing at the time of the occurrence in controversy in such a way as to be instructive they will be rejected. 17 Cyc. 419, note 18; Harris v. Quincy, 171 Mass. 472; Verran v. Baird, 150 Mass. 141. (5) The plaintiff's instructions were proper. Prendiville v. St. Louis Transit Company, 128 Mo. App. 596.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of personal injuries received through defendant's negligence. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff received his injury through defendant's wagon being backed upon him so as to crush his leg while in the act of mounting the freight platform in the depot of the St. Louis Transfer Company. It appears the St. Louis Transfer Company maintains a large freight depot in the city of St. Louis near Second street and between Biddle street on the north and Carr street on the south. The depot, though roofed overhead, is constructed so that teams and wagons may drive into and through. it for the purpose of loading and unloading freight. Two large freight platforms are maintained within the depot and extend north and south from Biddle to Carr streets. One of the platforms is erected on the east side of the passageway for conveyances and the other on the west.

Platintiff was employed, and had been for many years, by the St. Louis Transfer Company, in the occupation of handling freight on the east platform. Defendant J. Kennard & Sons Carpet Company, is engaged in the wholesale carpet business in St. Louis and frequently delivers carpets for shipment at the freight depot above described. It appears that its driver, Werremeyer, who was in charge of the team at the time plaintiff received his injury, was entirely familiar with the situation and the *locus in quo,* and it is to be inferred from the frequency with which he visited the place in hauling carpets that he knew the habits of the employees thereabout. It was the habit and the custom of the men employed by the Transfer Company in handling freight on the platform, to go out to lunch about noon each day and return through the. passageway where wagons and teams delivered goods on and received goods from

the platform. The east platform—that is, the one to which plaintiff was in the act of mounting at the time of his injury—was about five feet in height, and it was the custom of wagons to back up against it either to receive or discharge freight thereon.

It appears plaintiff was returning from his lunch and, entering the wide passageway about 12.45 o'clock p. m., passed defendant's wagon as it was driving into the depot with a load of carpets. On. passing defendant's wagon, plaintiff spoke to Werremeyer, the driver, and Werremeyer spoke to him in return, and it is said defendant's wagon was still moving at the time. Defendant's wagon was laden with rolls of carpet for shipment and to be delivered on the east platform at the entrance of the Vandalia and Big Four railroads, for it appears these two carriers occupied the same or adjoining, space at the depot. However, it does not appear that plaintiff knew the destiny of the goods on the wagon or just where they were to be unloaded. The evidence on the part of plaintiffs tends to prove that there were two other heavy stake wagons standing adjacent to the east platform, but lengthwise along beside it so as to leave a space of about twelve feet in width between them. This space was immediately adjacent to the landing of the Vandalia and the Big Four railroads and it appears to be the very space into which defendant's wagon was destined to back to discharge its load. The "southern wagon," as referred to in the evidence, standing besides the platform, was of the character known as a "stiff-tongued wagon," in that the tongue protruded horizontally directly in front, but no team was attached to it at the time. Plaintiff entered into the space, about twelve feet wide, between the two wagons, with the purpose of mounting the platform by stepping upon the stiff tongue of the "southern wagon" and was thus engaged when de-

fendant's wagon with the load of carpets backed upon him so as to catch and crush his leg between the rear end of its wagon and the side of the platform. It appears that defendant's driver, immediately after speaking to plaintiff, turned his horses and suddenly backed the load of carpets into the open space, while plaintiff was in the act of mounting upon the platform and stood with one foot on the stiff and extended tongue of the "southern wagon" and the other upon the platform, said to be about five feet in height above the surface of the passageway. There is evidence in the record tending to prove that such was the usual course of the men engaged about the freight platform on returning from their lunches, and the place was thus more or less frequented by employees of the St. Louis Transfer Company. Many wagons and many persons passed in and out each day, and all in all the situation appears to have been a busy mart. There is direct evidence that no warning whatever was given by defendant's driver before backing his wagon with a load of carpets into the open space and upon plaintiff, and it is to be inferred, too, from the evidence, that the driver made no observation whatever for persons thereabout before attempting to back his wagon into the place.

It is argued the court should have directed a verdict for defendant because no breach of duty on its part appears, but obviously this suggestion is without merit. The evidence is abundant to the effect that men frequented the place where plaintiff was injured, and came upon the platform from lunch precisely as he did. There is an abundance of evidence, too, tending to prove that defendant's driver was sufficiently familiar with the situation and the habits of those engaged thereabout to know that the place was likely to be so used at that hour of the day. Although it was not a public street, it was, nevertheless, a public place, in a sense, and used by wagons

and teams and employees thereabout quite as much as a thoroughfare. The record is replete with evidence tending to reveal these facts to be true. As before said, it appears from direct proof that defendant's driver gave no warning whatever that he intended to back his wagon into the space where plaintiff was injured and an abundant inference is afforded from the entire evidence that he made no observation whatever before backing the wagon with great force against plaintiff and the platform. Obviously, when the circumstances are considered, the precepts of ordinary care would seem to require that defendant's driver should not only have made some observation for persons about to go upon or come from the platform at the time, but should have given a warning as well for their benefit and others likely to be there. It would seem that an ordinarily prudent person would do this much, in order to obviate the probability of injuries to others. The situation and the character of the place were such as to suggest it within the range of probabilities that an injury was likely to befall some one through being crushed by a wagon suddenly backed without warning or observation upon them. Obviously the law devolved the duty upon defendant's driver to anticipate the presence of persons there and make observations and give warning, to the end of rendering them reasonably secure from injury or hurt. The character of the place and its use resemble a public street and the principle attending the use of the one applies with equal force to the other. [See McCloskey v. Chautauqua Ice Co., 174 Pa. St. 34; Shamp v. Lambert, 142 Mo. App. 567, 571, 572, 121 S. W. 770; Ostermeier v. Kingman, etc. Implement Co., 255 Mo. 128, 164 S. W. 218.]

But it argued the court should have directed a verdict for defendant because plaintiff's story of the manner of his injury is improbable, in that it is contrary to the physical facts, and because, too, he was

evidently guilty of contributory negligence. Much is said touching plaintiff's evidence to the effect that, upon his speaking to defendant's driver and the driver's returning the salutation, he immediately turned into the space to mount the platform and the wagon backed in upon him before he reached a place of safety. It is true plaintiff said defendant's wagon was still moving forward and had not commenced to back in at the time he spoke to the driver. And it is true, too, that plaintiff's story, if full value is given to every word, as it appears—for he says it was but a second—seems to be an improbable one. But though such be true, we do not regard it so highly improbable as to render the question one about which different minds could not entertain divergent views, for the word "second" is promiscuously used to express a short interval of time and not always in its precise sense. It may be that plaintiff tarried for an instant or walked very slowly so as to consume the time occupied by defendant's driver in stopping his team and commencing the backward run of the wagon. Plaintiff's evidence is not so completely at variance with known physical laws as to remove it from the province of the jury, and while there may be a suggestion that he was somewhat remiss with respect to the duty to look out for his own safety, it does not appear conclusively that he tarried, without care, in the face of a known danger. The question concerning his contributory negligence was clearly one for the jury.

On the trial defendant sought to introduce several photographs of the situation described in evidence, showing wagons located as they were at the time, the place of plaintiff's injury and wagon which occasioned his injury, set as at the time; but the court excluded these on the objection of plaintiff's counsel, and to this ruling defendant excepted. The court seemed to entertain the view that, in order for the

photographs to be admissible, they must reveal the situation in all of its attendant details precisely and identically as it was at the time. It is true the photographs were taken some time after the occurrence, as is usually the case, but the evidence introduced in connection with them is to the effect that at least two of the wagons photographed were the identical wagons present at the time plaintiff received his injury. Defendant's wagon shown by the photograph was the same and loaded with carpets as nearly thereto as could be as it was when plaintiff was injured. In every material respect, the photographs, according to the evidence of the witness, appear to truly portray the *locus in quo* and the arrangement of the wagons and show the precise place at which plaintiff received his injury. It is entirely clear that these photographs were admissible for what they were worth, though, of course, they were in nowise conclusive on the question.

Mr. Wigmore, in his valuable work on Evidence, Vol. 1, sec. 792, says: "If a qualified observer is found to say, 'This photograph represents the fact as I saw it,' there is no more reason to exclude it than if he had said, 'The following words represent the fact as I saw it,' which is always in effect the tenor of a witness' oath. If no witness has thus attached his credit to the photograph, then it should not come in at all, any more than an anonymous letter should be received as testimony. There can be no middle ground between these two consequences. Occasionally a court is found excluding a photograph as being misleading; but this is a begging of the very question which the jury have to decide; it would be as anomalous as if the judges were to order a witness from the stand because he was believed by the judge to be lying. Perjury cannot be thus determined in advance by the judge—not more for photographic than for verbal testimony."

It is true, while the photographs themselves are not to be received as evidence of the facts, they are, if properly identified, as in this case, when shown to represent the situation truly, as the witness saw it, competent as illustrations of the testimony, and to this extent are to be received and considered for what they are worth. [See Baustian v. Young, 152 Mo. 317, 324, 53 S. W. 921; Geer v. Missouri Lumber, etc. Co., 134 Mo. 85, 34 S. W. 1099; Dean v. Wabash R. Co., 229 Mo. 425, 446, 447, 129 S. W. 953.] Of course, sometimes photographs are misleading through being made from a viewpoint to confuse, and in such cases should be excluded, if the evidence shows such to be the fact concerning them; but nothing of that kind appears here. These photographs are said to be truly representative of all of the essential details of the case, and the mere fact that the identical wagons were not employed and that they were taken subsequent to the time of the injury are unimportant. However, as the facts of the case are so fully developed in evidence, we would hesitate to reverse the judgment for this alone, because we cannot say, as the statute requires, that the error in excluding the photographs was manifestly prejudicial to defendant. The situation, the location of the wagons and the precise manner in which plaintiff received his injury were so thoroughly detailed in evidence that the jury were obviously apprised of all of the facts though they were denied the illustration of the evidence which the photographs portrayed.

But the judgment may not be sustained for that it seems the jury were permitted by plaintiff's instructions to give a verdict against defendant without heed to the specifications of negligence relied upon in the petition and on any theory of the remission of duty which it might evolve on the facts. The petition, besides containing a general averment of negligence, counts upon the failure of defendant's driver to warn

plaintiff that he was about to back the wagon and, further, upon the fact that the driver made no observation or lookout before backing the wagon upon him. It is unnecessary to copy the petition here, for such in substance are the two specific acts of negligence set forth and relied upon for a recovery. It is the established and accepted law that where specific acts of negligence are set forth in a petition, which contains likewise a general allegation of negligence, such specific negligent acts are to be treated as superseding the general averment and the plaintiff must recover on them, if at all. [See McManamee v. Missouri Pac. Ry. Co., 135 Mo. 440, 37 S. W. 119; Barnett v. Star Paper Mill Co., 149 Mo. App. 408, 130 S. W. 1121; Gibler v. Quincy, O. & K. C. R. Co., 148 Mo. App. 475, 128 S. W. 791; Waldhier v. Hannibal, etc. R. Co., 71 Mo. 514; Clark v. General Motor Car Co., 177 Mo. App. 623, 160 S. W. 576.] Moreover, it is the rule, too, even in those cases where the averment of negligence is general in character and no specific acts are alleged, that the instructions must require the jury to find the particular acts of negligence said to be revealed by the testimony. This is true because defendant is entitled to have the jury committed by the instructions to the case made in the evidence. [Sommers v. St. Louis Transit Co., 108 Mo. App. 319, 83 S. W. 268; Miller v. United Rys. Co., 155 Mo. App. 528, 134 S. W. 1045.] The rule is the same in, and finds special application to, those cases, such as this one, where the petition counts on specific acts of negligence, for then the instruction must require the jury to respond to the precise charges laid in the petition and said to be established in the evidence. The authorities are multiplied on the subject. [See Allen v. St. Louis Transit Co., 183 Mo. 411, 81 S. W. 1142; Beave v. St. Louis Transit Co., 212 Mo. 331, 111 S. W. 52; Davidson v. St. Louis Transit Co., 211 Mo. 320, 109 S. W. 583; Crone v. St. Louis Oil Co., 176 Mo.

App. 344, 158 S. W. 417; Miller v. United Rys. Co., 155 Mo. App. 528, 134 S. W. 1045; Clark v. General Motor Car Co., 177 Mo. App. 623, 160 S. W. 576.]

Plaintiff's first instruction, which purports to cover the whole case and authorize a verdict for him, impinges the rule above stated in that it incorporates no requirement whatever to find either of the specific acts of negligence relied upon, but, on the contrary, is so general in its terms as to permit the jury to wander at random. The instruction is as follows:

"If you find and believe from the evidence that the plaintiff in this case, while going to his work and in attempting to mount the east platform referred to in the evidence, was exercising that degree of care which an ordinarily prudent person would have exercised under similar circumstances and conditions, and that he was run into and his left leg crushed by a wagon driven by an employee of the defendant, J. Kennard & Sons Carpet Company, and that the defendant, J. Kennard & Sons Carpet Company's wagon was backed into the space referred to in the evidence between the north and south wagons referred to in the evidence, in a negligent way, by the defendant's driver—that is to say, if you find and believe from the evidence that the driver of defendant's wagon in backing his team into the space between the north and south wagons referred to in the evidence did not exercise ordinary care—that is to say, in such a way as an ordinarily prudent person under similar circumstances and conditions would have backed his wagon —and that the plaintiff was injured as the result of the failure on the part of defendant's driver to exercise the degree of care as hereinabove set out, then your verdict shall be for the plaintiff in such sum as, considering all the facts in the evidence, will be a fair and reasonable compensation to him for the injury which plaintiff has received—not, however, to exceed the sum of $15,000."

In defendant's examination of Sullivan, the fore-man at the transfer depot, it cropped out that defend-ant might have unloaded its goods in the alley, if it had chosen to do so—that is, at an approach to the east platform through the alley and outside of and apart from the place where plaintiff was injured. Plaintiff's counsel seized upon this and pressed it by further examination, over the objections and excep-tions of defendant, so as to elicit much evidence as if to suggest that defendant had violated some duty in entering the usual passageway and backing the wagon up to discharge the goods where it did. The arguments of plaintiff's counsel on the objection made reveals, too, such to be the purpose of pressing this examination. Obviously no breach of duty could be assigned against defendant on this score and all of this evidence was prejudicial. It is referred to here, however, more particularly because of the fact that the general language of the instruction above copied authorizes the jury to find against defendant on any theory of negligence it might evolve on the testimony and in no manner requires a finding of the facts set forth in the petition and relied upon. It is true the instruction requires the jury to find that defendant did not exercise ordinary care in backing its wagon, but, nevertheless, these general requirements in in-structions in negligence cases the courts, including the Supreme Court, say are to be condemned because they permit the jury to evolve some theory of liability which may be entirely foreign to the issue presented in the pleadings. [Sommers v. St. Louis Transit Co., 108 Mo. App. 319, 83 S. W. 268; Beave v. St. Louis Transit Co., 212 Mo. 331, 351, 352, 111 S. W. 52.]

Plaintiff's second instruction seems to proceed as if the duty to make observations before backing the wagon rested upon defendant's driver, and we believe so much of it is well enough. But it author-izes a verdict for plaintiff on a general finding of

negligence—that is, on the jury's finding that "defendant's driver failed to exercise that care as defined above, and that as a result of the failure of the defendants driver to exercise said care the plaintiff received the injury referred to in the evidence." This instruction should be redrafted so as to require the jury to find in what respect defendant breached its duty with reference to the averments of negligence contained in the petition.

For the errors in the instructions above pointed out, the judgment should be reversed and the cause remanded. *Allen, J.,* concurs. *Reynolds, P. J.,* not sitting.