HORACE P. BEAVE v. ST. LOUIS TRANSIT COMPANY, Appellant.

Division Two, May 19, 1908.

1. **NEGLIGENCE: Instruction: Not Authorized by Pleading.** The petition charged that defendant street railway company "so negligently and unskillfully managed the car on which plaintiff was a passenger, and so negligently maintained said car and the machinery and appliances thereof, and the brakes and running gear thereof, as to cause and suffer said car to collide with the engine and cars of the defendant Missouri Pacific Railway Company upon said crossing, and to cause plaintiff's injuries aforesaid." *Held,* That an instruction which authorized the jury to find for plaintiff if they believed from the evidence that the street railway company failed to "exercise the highest practicable degree of care, as would be exercised by very careful and skillful railroad employees under the same or similar circumstances," was broader than the petition, and authorized the jury to find for plaintiff on issues not presented by it. The petition is not equivalent to an averment of general negligence—that is, it does not simply allege that plaintiff was a passenger, that a collision occurred, and that he was injured in consequence

thereof—but it alleges the specific acts of negligence relied on for recovery, and plaintiff cannot recover for any others.

2. ——: ——: Applying Brakes: Slippery Track. Where there was evidence that the car was running fast down a steep, slippery and muddy track, and collided with a railroad engine on a crossing track, and that the motorman did not try to stop it until it was near the crossing, there is evidence upon which to base an instruction which tells the jury that if the motorman negligently managed the brakes and running gear thereof, etc.

3. ——: Instruction for Another Defendant. Where the jury found against the street railway, but in favor of the steam railroad, the plaintiff is not responsible for error in an instruction asked and given for the steam railroad.

4. ——: Accident: No Evidence: Instruction. It is improper to instruct the jury that they will find for defendant if they believe the injury was the result of an accident when there is no evidence that it was the result of an accident. Where the collision of a street car with the train of a railroad was due either to the negligence of the motorman, the defective condition of the brake, or the steep and slippery condition of the track, no instruction excusing defendant if the collision was the result of mere accident should be given.

5. HYPOTHETICAL QUESTION: Assumed Fact: Concussion of Brain. Where there is conclusive evidence tending to prove a fact in the case, it is not error to assume in the hypothetical question that such fact exists. Where the evidence shows that plaintiff's skull was fractured; that he remained unconscious for seventeen days, and that since he has been unable to labor or to concentrate his mind, it was not error for the hypothetical question to assume that plaintiff sustained "concussion of the brain," but altogether appropriate, or that he has since been unable to do manual or other labor.

6. PHYSICIAN: Incompetency. A physician who had charge of the hospital in which plaintiff was placed soon after his injury; who examined him every day or so, because, as he testifies, he was responsible for every person who entered the hospital for treatment; and whose associate and assistant physicians and surgeons, under his supervision, treated and operated upon plaintiff for his injuries, is incompetent to testify, over plaintiff's objections. The mere fact that he did not prescribe for him in no manner changes the rule, if through his assistants he had charge of him.

7. EXCESSIVE VERDICT: $7,500. The evidence shows that by the collision of the car on which plaintiff was a passenger, with a train, his skull was fractured, and it was necessary to remove a portion thereof; that his brain is now covered and protected

with only the scalp and the membranes; that his mind is so affected that he cannot concentrate his attention upon business; that he had become weak and unable to perform manual labor; that his head still pains him when he slightly exerts himself; and that his eyes have become so affected that at the age of thirty-one he has been compelled to put on glasses. *Held*, that a verdict of $7,500 is very reasonable.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

REVERSED AND REMANDED.

*Edward T. Miller* and *T. E. Francis* for appellant; *Boyle & Priest* and *Morton Jourdan* of counsel.

(1) Instruction 1, given at the request of plaintiff, is erroneous because it authorized the jury to return a verdict for plaintiff, if they found that there was any negligence on the part of defendant, instead of limiting them to the particular act of negligence counted on in the petition. Feary v. Railroad, 162 Mo. 96; Ely v. Railroad, 77 Mo. 34; Waldhier v. Railroad, 71 Mo. 514; Price v. Railroad, 72 Mo. 414; Leslie v. Railroad, 88 Mo. 50; Yarnell v. Railroad, 113 Mo. 570; Bunyan v. Railroad, 127 Mo. 12; Hite v. Railroad, 130 Mo. 132; McManamee v. Railroad, 135 Mo. 440; Bartley v. Railroad, 148 Mo. 124. (2) The court erred in refusing to give the instruction in the nature of a demurrer to the evidence offered by the appellant at the close of the plaintiff's evidence and at the close of the whole case, because plaintiff introduced no evidence tending to prove that appellant was guilty of the specific acts of negligence averred in the petition. Authorities cited under point 1. (3) Instruction 3, given at the request of plaintiff, is erroneous because it authorized the jury to return a verdict for plaintiff, if they found that appellant was guilty of negligence in the management of the car and maintenance of its machinery and appliances, when there was no evidence

tending to prove such negligence. Evans v. Railroad, 106 Mo. 594; Hutchinson v. Realty Co., 88 Mo. App. 614; McQuillan on Instructions, sec. 99. (4) Instruction 7, given at the request of the Missouri Pacific Railway Company, is erroneous because it authorized the jury to find against the appellant, if they believed that the motorman could have prevented the car from acquiring so great a velocity that it could not be stopped, in the absence of evidence tending to prove such fact. Evans v. Railroad, 106 Mo. 594; Hutchinson v. Realty Co., 88 Mo. App. 614; McQuillan on Instructions, sec. 99. There was no evidence tending to show that under these circumstances, the motorman could have prevented the car from acquiring the velocity it did, and the submission of this question to the jury was, therefore, erroneous. Evans v. Railroad, 106 Mo. 594; Hutchinson v. Realty Co., 88 Mo. App. 614; McQuillan on Instructions, sec. 99. (5) The court erred in refusing to give instruction 6, asked by appellant, which directed a finding for it, if the jury believed that plaintiff's injuries were due to mere accident or misadventure. Sawyer v. Railroad, 37 Mo. 262; Henry v. Railroad, 113 Mo. 537; Maxey v. Railroad, 95 Mo. App. 308; Feary v. Railroad, 162 Mo. 99. (6) The court committed prejudicial error against appellant in permitting plaintiff to propound to the witness, Dr. Ring, a hypothetical question as to the permanency of plaintiff's injuries, which assumed that plaintiff had sustained a concussion of the brain as a result of his injury, that he had been unable to labor and had been unable to concentrate his mind upon anything like clerical work, when there was no evidence in the case tending to establish said facts. Russ v. Railroad, 112 Mo. 48; State v. Brown, 181 Mo. 215. There is not one syllable of evidence in the record tending to show that plaintiff had sustained a concussion of the brain as a result of his injury. Neither is there any evidence

tending to show that he had been unable to labor or to concentrate his mind on anything like clerical work since his injury. (7) The court erred in refusing to permit appellant's witness, Dr. Brokaw, to testify concerning plaintiff's condition, because it was shown by the evidence that his information had not been acquired while attending plaintiff in a professional capacity. State v. Morgan, 196 Mo. 177.

*A. R. Taylor* for respondent.

(1) The petition in this case in its averments of the negligence of appellant is as broad as the language will permit. So far from alleging a specific negligence as complained by appellant in its brief, only general negligence is alleged in the strictest conformity with the rulings of this court. Under the averments of this petition the negligence of any servant or agent of appellant in any manner connected with the operation of its track or cars would be included. The case of Feary v. Railroad, 162 Mo. 96, is precisely to the contrary of appellant's claim. And the two cases of Malloy v. Railroad, 173 Mo. 82, and Hennessy v. Railroad, 173 Mo. 88, are also. The latter two cases were founded on a petition less broad in their averments than in this case, yet this honorable court held in both cases that the petition covered every servant in anywise connected with the operation of cars or track. (2) The second and third contentions of appellant's brief are founded upon the same misconception of the law. When a passenger is injured by a collision, derailment, breaking of the vehicle or from any cause which the carrier ought to control as a part of its duty as a carrier, the law casts the burden on the carrier to exonerate itself from the implication of negligence, by showing the casualty occurred in spite of the high degree of care imposed by the law on the carrier. This rule of law is venerable with age, and is also

full of virility in its age.   Lemon v. Chanslor, 68 Mo.
544; Dougherty v. Railroad, 97 Mo. 654; O'Connor v.
Railroad, 108 Mo. 243; Clark v. Railroad, 127 Mo.
208; Ochs v. Railroad, 130 Mo. 51; Olsen v. Railroad,
152 Mo. 432; Lee v. Knapp, 155 Mo. 642.   (3)   The
fourth point made by appellant for reversal is amen-
able to the following objections:   It is a complaint
against its codefendant Missouri Pacific Railway Com-
pany, not against this respondent.   If this instruction
could be held erroneous, this respondent presents clean
hands and a clean conscience, as to it.   We are not to
be held culpable for the misdeeds of the Missouri Pa-
cific in the trial.   Whilst this instruction was being
asked and given we were powerless to prevent it.   We
sat "like patience on a monument smiling at grief."
With the errors in the instructions between these de-
fendants this respondent had no part.   Taylor v. Rail-
road, 137 Mo. 368; O'Rourke v. Railroad, 142 Mo. 357.

FOX, P. J.—The plaintiff instituted this suit in
the   circuit   court of   the   city   of   St.   Louis
against   the   St.   Louis   Transit   Company,   United
Railways   Company   of   St.   Louis   and   the   Mis-
souri Pacific Railway Company, to recover the sum
of $25,000 damages on account of personal injuries sus-
tained by him, caused by the alleged negligence of the
defendants in permitting a street car of the Transit
Company, on which plaintiff was a passenger, to come
in collision with an engine and train of cars belonging
to and moving upon the tracks of the Missouri Pacific
Company, at the intersection of those railroads on
Chouteau avenue, in the city of St. Louis.

The cause was dismissed as to the United Rail-
ways Company, and upon a trial had the jury found
for plaintiff against the Transit Company, and assessed
his damages at the sum of $7,500, and in favor of the
Missouri Pacific Railway Company.   After taking the

proper preliminary steps, the Transit Company appealed the cause to this court.

The material allegations of the petition in so far as relate to the Transit Company are substantially as follows:

"The plaintiff states that defendants are corporations by virtue of the law of Missouri, and were such at the times stated. That at said times defendants, St. Louis Transit Company and United Railways Company of St. Louis, were operating the street railway and car herein mentioned for the purpose of carrying passengers for hire, and at said times the Missouri Pacific Railway Company was a steam railroad, and operated the railway and engine and cars herein mentioned as colliding with the car on which plaintiff was a passenger, and also maintained the gate and watchman at the street crossing herein mentioned. That on the 13th day of August, 1903, the plaintiff was a passenger on the car of defendants, St. Louis Transit Company and United Railways Company of St. Louis, proceeding west on Chouteau avenue, an open public street within the city of St. Louis, at the crossing of said street, with the railway track of defendant, Missouri Pacific Railway Company, when said street car was collided with by an east-bound engine and train of defendant Missouri Pacific Railway Company, and plaintiff was thereby greatly and permanently injured upon his head and body, leg and back and chest. His skull was crushed, and the bones thereof broken, and the plaintiff sustained internal injuries and his nervous system was permanently injured.

"And plaintiff avers that the servants of defendants, St. Louis Transit Company and United Railways Company of St. Louis, so negligently and unskillfully managed said car on which the plaintiff was such passenger, and so negligently maintained said car and

the machinery and appliances thereof, and the brakes and running gear thereof, as to cause and suffer said car to be collided with by the engine and cars of the defendant Missouri Pacific Railway Company upon said crossing, and to cause plaintiff's injuries as aforesaid.

"That by his injuries so sustained, the plaintiff has suffered great pain of body and mind. Has been permanently crippled and disabled from labor and his avocation as a clerk; has lost and will lose the earnings of his labor and avocation; has incurred large expenses for medicines, medical and surgical attention and nursing, and his health permanently injured and his memory impaired to his damage in the sum of twenty-five thousand dollars, for which sum he prays judgment."

The answer of the Transit Company was a general denial.

The answer of the Missouri Pacific Company was, first, a general denial; second, contributory negligence; and, third, at the time of plaintiff's alleged injury there was in force in the city of St. Louis an ordinance No. 21113, approved April 5, 1903, wherein it is provided by subdivision 2 of section 1760A thereof that "at all points where the street car tracks may intersect or cross any steam railroad track, every street car shall be brought to a full stop not less than ten nor more than twenty-five feet from nearest point of intersection, and shall not proceed to cross said railroad track until, upon sufficient investigation, the conductor or other proper agent, appointed by the company for that purpose, is assured there is no danger of collision, whereupon the person in control of said car shall be signalled to proceed." That neither of the defendants —St. Louis Transit Co., or the United Railways Co. of St. Louis—complied with either of said provisions of said ordinance on the occasion of plaintiff's alleged injury; and that his injuries were due solely to the

failure of said St. Louis Transit Co. or United Railways Co. of St. Louis to comply therewith, and not in consequence of any negligence of this defendant.

The plaintiff, for reply to the separate amended answer of the defendant, Missouri Pacific Railway Company, denies the allegations thereof.

The plaintiff introduced evidence tending to prove the following facts: That the Transit Company's tracks cross those of the Missouri Pacific at right angles on Chouteau avenue; that he was a passenger on the car of appellant, west-bound on Chouteau avenue, and was sitting near the rear end thereof; that there is quite a decline on Chouteau avenue from the east to the west at and near the point where the tracks cross each other; that at the time of the accident the street car tracks were wet, muddy and slippery; that the car ran down the decline toward the Missouri Pacific tracks at a "pretty fast gait;" that the motorman attempted to stop the car before it reached the railroad crossing, but did not quite succeed in doing so; that in the meantime the Missouri Pacific engine had almost reached the crossing, and in order to avoid a collision the motorman started the car up quickly, but before it cleared the tracks it was struck by the engine and derailed; that in the collision plaintiff was knocked down and injured, and was found lying by the side of the track unconscious shortly after the accident occurred, and remained unconscious for seventeen days. The evidence tended to show that in the collision he received a fracture of the skull which required an operation to be performed and the removal of a portion of the skull an inch in width by one and a half or two inches in length; that the injuries affected his eyesight and necessitates his using glasses; that his strength and memory are so impaired that he can no longer perform his duties as clerk, or perform manual labor, except to carry a little wood at times; that every

exertion gives him severe headaches; and that his injuries were permanent. That prior to his injuries he was strong and in good health, and never wore glasses. He was thirty-one years of age and was working for a railroad at $50 per month as a clerk. That he had incurred $25 for medicines and $260 for medical and surgical treatment, and was confined to the hospital for almost two months, and, after that, at the home of his sister for one month.

The defendant Transit Company then offered a demurrer to plaintiff's evidence, which was, by the court, overruled, and it duly excepted.

It then offered evidence tending to prove that the motorman in charge of the car was not guilty of negligence in operating the car, nor in handling the appliances with which it is controlled; that the wet, muddy and slippery condition of the tracks caused the wheels of the car to slip and slide along the rails and thereby prevented the motorman from stopping the car before it reached the crossing. That plaintiff's injuries were not permanent; that he would fully recover from the effects thereof, and had practically recovered at the time of the trial. The Transit Company also introduced evidence tending to prove that the injury to plaintiff was caused by the negligence of the Missouri Pacific Company, but as it is not a party to this appeal it will serve no useful purpose to state the substance of that evidence here.

Dr. A. V. L. Brokaw testified for appellant as follows: He is a physician and surgeon, a graduate of Missouri Medical College and had practiced his profession since 1885. That he had seen the plaintiff, from time to time, while he was confined in St. John's Hospital. He was not under witness's care. He was under the care of Dr. Brown, who was associated with witness in the work at St. John's Hospital as junior

surgeon. Witness was surgeon in chief at said hospital.

Counsel for plaintiff, Mr. Taylor: "Q. Doctor, whatever information you have in regard to the condition of the plaintiff Beave you obtained from him while he was in your charge or under your control, for the purpose of enabling you to prescribe for him, is not that so? A. He was not under my charge at all. He had been operated on by Dr. Brown, and Dr. Brown was responsible for every feature and phase in the case.

"Q. I understand, but Dr. Brown was your subordinate? A. Yes, he is my associate.

"Q. Now, I ask you if it is not true that whatever information you received or obtained in regard to the condition of this plaintiff was obtained by you while he was under your care and that of Dr. Brown? A. He wasn't under my care. He was under the care of Dr. Brown, and Dr. Brown consulted me concerning the case.

"Q. Well, when you looked at him and examined him you obtained whatever information you did obtain as to his condition for the purpose of enabling you to prescribe for him or to help treat him? A. Never prescribed for him in my life.

"Q. Or to treat him? A. I never dressed him, I don't believe, in my life.

"Q. What did you look at him for? A. Because he was an inmate of the hospital, and because I am responsible for everybody that goes into that hospital, surgically, that is directly and indirectly under my care.

"Q. And you looked at him for the purpose of enabling you to suggest a treatment for him, didn't you? A. I had no suggestions to make. The men who treated him were perfectly competent to treat him.

"By the Court: The question is whether you looked at him for that purpose. A. I looked at him like I do every other person in the hospital. I go through the wards and through the rooms and see the cases that are operated on by myself or by my assistants, and as far as indicating any line of treatment, why, they are supposed to be competent to carry that out themselves.

"Mr. Taylor: I understand, but you look at them to see that they are properly taken care of, and you obtained whatever information you got under those conditions by looking at him, to see whether he was being treated right, that is true, isn't it? A. Yes, you might put it that way.

"Mr. Taylor: I object to the competency of the evidence.

"Mr. Jourdan, counsel for defendant: Doctor, what physicians had charge of this case? A. Dr. Nietert was called in, I believe, by some member of his family, and Dr. Nietert and Dr. Brown had charge of the case. I had absolutely nothing to say. If Dr. Nietert had any suggestions to make, Dr. Brown carried out his suggestions.

"Q. Well, what physicians were in charge of his case? A. Dr. Rader, I think is the name, and Dr. Nietert. There were two doctors in there.

"Q. And they were independent of the hospital were they? A. Oh, they were absolutely independent. They have absolutely no connection with the hospital, and my going in there was through the courtesy of those gentlemen, practically. Dr. Brown had operated on him, and they naturally knowing that Dr. Brown was my assistant, I took an interest in watching the outcome of the case.

"Q. And properly so? A. And properly so.

"Q. Were you ever consulted by the plaintiff or asked to prescribe? A. I don't think directly. He

had some minor dressings put on at the office. After he left the hospital he came to the office, and Dr. Kline-felter, another assistant, dressed him, and I saw him from time to time.

"Q. But I mean after he left the hospital were you ever requested by him to treat him? A. Oh, no, he made no request of me. I simply saw him and he knew I was the surgeon in chief at the hospital, and it was my privilege, through the courtesy of these doctors, to go in and see him and see that he got along well and got every attention.

"Q. Now, doctor, you may state his condition as you saw it two or three days before he left the hospital.

"Mr. Taylor: I object to that on the ground that he was in the relation of physician and patient. He was the chief surgeon there. He stated that what he learned he learned while he was investigating to see whether this man was being treated properly. That would be for the purpose of enabling him, in case the treatment was not proper, to prescribe a proper treatment, and I say he comes within the inhibition of the statute which prohibits a physician or surgeon, as it does other professional men, from testifying against the patient.

"Objection sustained. To which ruling of the court defendant, St. Louis Transit Co., then and there duly excepted.

"Mr. Jourdan: You may state, doctor, if at the time he left the hospital he had entirely recovered from the wound he had received in this accident on the 13th of August? A. Aside from some little minor dressing, there was no necessity for his remaining in the hospital, and he was advised, I presume, by Dr. Nietert that he didn't need to stay there. I never discharged him.

"Q. You say you had seen the patient frequently

during his stay in the hospital? A. Yes, sir, I saw him every day or two, or every few days.

"Q. You saw his condition a day or two after the accident? A. Yes, sir.

"Q. And you knew his condition about the time he left the hospital? A. Yes, sir, and after he left the hospital.

"Q. Now, Doctor, I will get you to state, consideding the age and physical condition of the plaintiff and the character of the wound and injury, if, in your opinion as a physician and surgeon, his injury is permanent, or will he entirely recover from it?

"Mr. Taylor: Now, Doctor, I understand that you didn't examine him after he left the hospital at all, did you? A. Oh, yes, sir, I did. I saw him at the office when he was dressed several times, talked to him frequently, probably two or three times.

"Q. Who dressed his wounds then? A. Why, Dr. Klinefelter—any of his assistants that happened to be there. There are six of them there. I don't know who dressed him.

"Q. Well, they were your subordinates? They were under you, weren't they? A. Yes, sir.

"Q. And what were you looking at him for, looking at this work being done, this dressing, what did you look at him for? A. I was interested in seeing the outcome of the case.

"Q. You were interested in seeing that they were properly dressed, weren't you? A. Well, that is not necessary. They are dressed properly.

"Q. Well, I understand, there was something now, that drew your attention there—

"Mr. Jourdan: Well, I submit that this examination has no connection with my question.

"Mr. Taylor: I submit that it has, because you are undertaking now to qualify him at some period

after he left the hospital. Now, I submit, if your Honor please, that whenever that man there supervising this work, seeing this man for the purpose of suggesting treatment or seeing that his treatment was well done, under the statute his lips are sealed.

"Mr. Jourdan: I asked him his opinion as a physician and surgeon.

"Mr. Taylor: Well, but if it is derived from what he saw, then he cannot give it. You can put a hypothetical case to him.

"By the COURT: What a physician observes in regard to the physicial condition of a party is as much a part of the examination as any other act that he may perform professionally. His knowledge is derived while acting as physician for the patient, and is just as much privileged as communication between the patient and the physician. I understand that St. John's Hospital, to which the doctor refers, is an institution under his charge, and that Dr. Brown was an assistant under him, and that this doctor at the doctor's office who applied these dressings is also an assistant under him, so that the two cases are parallel. You may examine further, if you desire, on that.

"Mr. Taylor: Well, I object to it being founded on any information he got in the manner indicated.

"Objection sustained. To which ruling of the court defendant Transit Company then and there duly excepted."

The defendant Missouri Pacific Company introduced evidence tending to show that it was not guilty of negligence which contributed to the injury. It also introduced the ordinance set out in its answer, and evidence tending to show that the car of the Transit Company did not stop before passing over the crossing as required by that ordinance.

At the close of all the evidence in the case the Transit Company renewed its demurrer to the evi-

dence, which was by the court overruled, and it duly excepted. Thereupon the court gave and read to the jury the following instructions at the instance of the plaintiff:

"1. The court instructs the jury that if they find from the evidence that the defendant St. Louis Transit Company was operating the car mentioned in the evidence for the purpose of carrying passengers for hire as a street railway; and if the jury find from the evidence that on the 13th day of August, 1903, the St. Louis Transit Company by its servants in charge of the said car, received the plaintiff as a passenger thereon to be carried to his destination on said car; then the court declares the law to be that the St. Louis Transit Company, by its servants in charge of said car, were bound to exercise the highest practicable degree of care, such as would be exercised by very careful and skillful railroad employees under the same or similar circumstances in the management of said car to carry the plaintiff safely as such passenger, and if they failed to do so and thereby directly contributed to cause the injury to the plaintiff mentioned in the evidence, said defendant is liable in this case.

"2. The court instructs the jury that if they find from the evidence that the plaintiff was a passenger upon the car of the defendant St. Louis Transit Company mentioned in the evidence on the 13th day of August, 1903; and if the jury find from the evidence that whilst the plaintiff was such passenger on said car proceeding westward on Chouteau avenue, a public street within the city of St. Louis, said car was struck by an engine of defendant, Missouri Pacific Railway Company, mentioned in the evidence, at the crossing of said defendant's track with said Chouteau avenue in the city of St. Louis, and that thereby the plaintiff sustained the injuries mentioned in the evidence; and if the jury find from the evidence that as said engine

ran toward and upon said crossing, the bell upon said engine was not rung eighty rods from said crossing, and kept ringing until said engine passed over said crossing; and if the jury believe from the evidence that such failure to so ring said bell directly contributed to cause said collision and plaintiff's said injuries; and if the jury find from the evidence that the plaintiff was exercising ordinary care at the time of his injuries, then the plaintiff is entitled to recover against defendant Missouri Pacific Railway Company.

"3. If the jury find from the evidence in this case that on the 13th day of August, 1903, defendant St. Louis Transit Company was operating the street car mentioned in the evidence to carry passengers for hire; and if the jury find from the evidence that on said day the plaintiff was a passenger on said defendant's car going west on Chouteau avenue, a public street within the city of St. Louis; and if the jury believe from the evidence that whilst the plaintiff was such passenger on said car going west on Chouteau avenue in the city of St. Louis, said car was collided with by an engine of the defendant, Missouri Pacific Railway Company, at the crossing of its tracks on Chouteau avenue, and that thereby the plaintiff received the injuries mentioned in the evidence; and, if the jury find from the evidence that defendant, St. Louis Transit Company, by its servants in charge of said car, and the machinery and appliances thereof, could by the exercise of the high degree of care of skillful and careful railroad employees under the same or similar circumstances, in the management of said car and maintenance of its machinery and appliances, have prevented said collision and plaintiff's injuries, then the defendant, St. Louis Transit Company, is liable, and the verdict should be for the plaintiff against said defendant; and if the jury further find from the evidence that as the engine of defendant Missouri Pacific Railway Company mentioned

in the evidence ran to and on said crossing, the bell on said engine was not rung eighty rods from said crossing and kept ringing until said engine crossed said street; and if the jury find from the evidence that such failure to ring said bell directly contributed to cause said collision and plaintiff's said injuries; and if the jury find from the evidence that the plaintiff was exercising ordinary care at the time of his injuries, then plaintiff is entitled to recover against both the St. Louis Transit Company and the Missouri Pacific Railway Company.''

Instruction number 4, given by the court in behalf of plaintiff, was on the measure of damages.

To the giving of which instructions, and each of them, defendant, St. Louis Transit Company, then and there duly excepted.

Thereupon the court gave, on behalf of the Missouri Pacific Railway Company, among others, the following instruction:

"7. The court instructs the jury that the facts that the rails of the defendant Transit Company were slippery and Chouteau avenue was muddy, do not excuse said Transit Company from failing to comply with the ordinance read in evidence by the defendant, the Missouri Pacific Railway Company, provided you believe from the evidence that the person or persons in charge of the street car with which the Missouri Pacific train collided could, by the exercise of the care defined in instruction number 1, have prevented said street car from acquiring so great a velocity that it could not be stopped before reaching the tracks of the Missouri Pacific Railway Company on Chouteau avenue.''

To the giving of which said instruction, the defendant, St. Louis Transit Company, then and there duly excepted.

Defendant, St. Louis Transit Company, requested

the court to give the following instruction, without the italicized words, but the court refused to give said instruction in said form, but amended the same by inserting said italicized words, and gave same as amended, to which action of the court in refusing to give said instruction as asked, and amending the same, and giving same in said amended form, said defendant then and there duly excepted. Said instruction, as given, was as follows:

"5. You are instructed that if you find and believe from the evidence that, when the car approached the Missouri Pacific crossing immediately prior to the accident, by reason of the condition of the track and of the refusal of the brake or reverse power to take or become effective, the St. Louis Transit Company's motorman was unable *by the exercise of the highest practical degree of care such as would be exercised by a very careful motorman,* to stop the car, and that in his attempt to stop the car he used all the instrumentalities at his command, and that notwithstanding his effort to stop the car, it slid down and on to said railroad track, and was struck by a Missouri Pacific engine, then in that case the St. Louis Transit Company's servants and employees were not guilty of negligence, and your verdict must be for the St. Louis Transit Company."

Defendant Transit Company also requested the court to give the following instruction:

"6. If you find and believe from the evidence that the plaintiff's injuries were directly due to the negligence of the servants and agents of the Missouri Pacific Railroad Company, or that they were due to mere accident or misadventure, then the plaintiff cannot recover against the St. Louis Transit Company, and your verdict will be for that defendant."

Which instruction the court refused to give, to

which action said defendant then and there duly excepted.

The cause being submitted to the jury they returned a verdict finding the issues for the plaintiff and assessing his damages at the sum before stated, $7,500.

Timely motions for new trial and in arrest of judgment were filed and by the court overruled. Judgment was entered against the defendant, St. Louis Transit Company, in conformity to the verdict. From this judgment the defendant Transit Company prosecuted its appeal to this court and the record is now before us for consideration.

## OPINION.

The record before us discloses the following assignment of errors:

1. The court erred in giving plaintiff's instruction number 1.

2. The court erred in refusing to give the instructions in the nature of a demurrer to the evidence offered by the appellant at the close of plaintiff's evidence and at the close of the whole case.

3. The court erred in giving plaintiff's instruction number 3.

4. The court erred in giving instruction number 7 for the Missouri Pacific Railway.

5. The court erred in refusing defendant's instruction number 6.

6. The court erred in permitting plaintiff to propound to witness, Dr. Ring, a hypothetical question which assumed facts not shown to exist by the evidence.

7. The court erred in refusing to permit appellant's witness, Dr. Brokaw, to testify as to the condition of the plaintiff.

8. The court erred in refusing to set aside the verdict as excessive.

We will give such attention to the respective assignments of error as their importance demand and require.

## I.

The appellant's first assignment of error challenges the correctness of respondent's instruction numbered 1. It is contended that that instruction authorized the jury to find for respondent upon issues not presented by the pleadings.

The petition alleged that plaintiff was injured by reason of the fact "that the servants of defendant, St. Louis Transit Company, so negligently and unskillfully managed said car on which plaintiff was such passenger, and so negligently maintained said car and the machinery and appliances thereof, and the brakes and running gear thereof, as to cause and suffer said car to be collided with by the engine and cars of the defendant, Missouri Pacific Railway Company, upon said crossing, and to cause plaintiff's injuries aforesaid." Instead of following this allegation of negligence and directing the jury to find for the plaintiff, if they believed he was injured in a collision caused by the negligence of the defendants, in the respect charged in the petition, the instruction authorized them to find for plaintiff if they believed that defendant in any manner or respect failed to exercise "the highest practicable degree of care," by reason of which plaintiff was injured.

Clearly this instruction submitted to the jury an entirely different issue from that presented in the pleadings. The petition charges the injury was caused by the defendant "so negligently and unskillfully managing said car on which the plaintiff was such passenger, and so negligently maintained said car and the machinery and appliances thereof, and the brakes and running gear thereof, as to cause and suffer said

car to collide with the engine and cars of the defend-
ant, Missouri Pacific Railway Company, upon said
crossing, and to cause plaintiff's injuries aforesaid;''
while the instruction completely ignores that allega-
tion, and authorized the jury to find for plaintiff if
they believed from the evidence that the company
failed to "exercise the highest practicable degree of
care, such as would be exercised by very careful and
skillful railroad employees under the same or similar
circumstances." This instruction authorized the ju-
ry to find for plaintiff if his injury was caused by any
negligent act on the part of the employees, whether
that act was stated in the petition or not.

The law is well settled in this State that a person
will not be permitted to plead one cause of action and
recover upon another. [Waldhier v. Railroad, 71 Mo.
514; Feary v. Railroad, 162 Mo. 1. c. 96.]

The respondent seeks to evade the operation of
the above rule by contending that the petition in the
case at bar is so broad in its charges of negligence
that it is equivalent to an averment of general neg-
ligence, which is a sufficient allegation in cases like this;
that is, that plaintiff would have made a prima-facie
case by merely alleging and proving that he was a pas-
senger, that the collision occurred, and that he was in-
jured in consequence thereof. As an abstract propo-
sition of law that contention is sound, and if the pe-
tition had been drawn upon that theory, then the in-
struction in this case would have been a correct decla-
ration of the law. [Malloy v. Railroad, 173 Mo. 1. c.
80-82; Hennessy v. Railroad, 173 Mo. 88.] But that
rule has no application where the petition, as in this
case, alleges the specific acts of negligence relied upon
for a recovery. [Feary v. Railroad, 162 Mo. 75, 96;
Ely v. Railroad, 77 Mo. 34, 36.]

In the case of Roscoe v. Railroad, 202 Mo. 576,
this proposition was exhaustively reviewed by this

court, and the rule as above suggested was fully approved, and numerous cases cited in support of the conclusions reached.

The reason for this rule is apparent. By charging the specific acts of negligence relied upon for a recovery is equivalent to stating that there are no other acts of the company which caused or contributed to the injury; and, if after stating his cause of action, the plaintiff is permitted to introduce evidence of and recover upon another and different cause, not stated in the petition, the defendant would thereby be taken by surprise, and would not be prepared to meet the new issues thus presented. It would be taking an undue advantage of defendant by lulling it into a sense of security from all attack, except in the manner stated in the petition. If, upon the other hand, the plaintiff desired to try his case upon the theory of general negligence, then he should have charged general negligence in his petition so that the defendant would have been informed of the charge it was required to meet, and thereby been enabled to meet and defend that charge.

A rule of pleading which would sanction the right of plaintiff to plead one cause of action and recover upon another, would be more vicious and harmful to the defendant than if there were no pleadings at all filed in the cause, because, if there were no pleadings, the defendant might, with some degree of accuracy, conceive in his own mind, by taking into consideration his relations and dealings with the plaintiff, the charge that he would be called upon to defend upon the return day of the summons, and in a measure be prepared to meet it; but not so if the plaintiff should be permitted to decoy him from that defense by false charges, and then be permitted to prove and recover upon another. Such is not the law, and we are unwilling to give it

our sanction. We are, therefore, constrained to hold that the instruction under consideration is erroneous.

## II.

The appellant next insists that the court erred in refusing to give the instruction in the nature of a demurrer to the evidence at the close of respondent's case in chief, and also at the conclusion of the introduction of all the testimony in the case. We are unable to lend our concurrence to that contention. We are of the opinion that the evidence made out a prima-facie case for plaintiff, and justified the court in submitting it to the jury. [Barth v. Railroad, 142 Mo. l. c. 548-9.]

## III.

The third assignment of error assails instruction numbered 3 given for respondent, because, it is contended, there was no evidence in the case upon which to base it. In substance, it told the jury that if they found the appellant was guilty of negligence in the management of the car, and negligently maintained said car and the machinery and appliances thereof, and the brakes and running gear thereof, and that in consequence thereof he was injured, they would find for the plaintiff.

The evidence discloses that the servants in charge of the car applied the brake and reversed the power in their efforts to stop it before reaching the railroad crossing, but were unable to do so, and, in consequence thereof, it passed upon the crossing in front of the engine of the Missouri Pacific Railway Company, and was thereby struck and derailed. While this evidence was not as full and clear as it might have been, yet we are unable to say that there was no evidence upon which to base the instruction. While somewhat meager, yet we are of the opinion that there was sufficient evidence to warrant the court in submitting those issues

to the jury. It was for them to say, under the evidence and instruction, whether it was the fault of the motorman, the brake or the steep and slippery track that caused the injury.

The conclusions here reached also dispose of appellant's fourth assignment of error. But independent of this, the respondent is not responsible for errors committed by the court in giving or refusing instructions declaring the rights of the defendants among themselves. He took no part in that and could not have prevented the action of the court in that regard. If error it was in giving said instruction, plaintiff, adopting the quotation as made in the brief of counsel for respondent, could but sit "like patience on a monument, smiling at grief." [Taylor v. Railroad, 137 Mo. l. c. 368; O'Rourke v. Railroad, 142 Mo. l. c. 352.]

We do not mean to be understood as holding, by what is above stated, that instruction numbered 7 given for the defendant Missouri Pacific Railway Company, is an erroneous declaration of the law, but simply mean to say that as to respondent it is immaterial under the facts of this case.

## IV.

Appellant's fifth assignment of error is untenable, because there is no evidence in the record which tends in the remotest degree to prove the injuries of the plaintiff were the result of an accident. The evidence in this cause shows that they were caused by one of three things, namely: the negligence of the motorman; the defective condition of the brake, or the steep and slippery condition of the track—all of which are inconsistent with the idea of an accident.

This question was fully and carefully considered by this court In Banc in the case of Zeis v. St. Louis Brewing Association, 205 Mo. 638. It was there held that it was improper to instruct the jury that they

would find for the defendant if they believed the injury was the result of an accident when there was no evidence in the case which tended to show the injury was the result of an accident. For the reasons there expressed, we have no hesitancy in holding that the court properly refused appellant's instruction No. 6.

## V.

The sixth insistence of appellant is that the court erred in permitting plaintiff to propound to the witness, Dr. Ring, a hypothetical question regarding the permanency of plaintiff's injuries. It is contended that said question was erroneous because it assumed plaintiff sustained concussion of the brain, and that he had been unable to do manual and other labor since sustaining the injury.

The evidence is undisputed that he sustained a fracture of the skull, and was thereby knocked senseless, and that he remained unconscious for a period of seventeen days, during which time a portion of his skull was removed. While the witnesses in testifying as to his injuries do not use the words "concussion of the brain," yet the blow received by plaintiff and the result thereof upon his head, did in fact produce *concussion of the brain.* Mr. Webster defines the word "concussion" to mean: (1) "The act of shaking or agitating, especially by the shock or impulse of another body;" and (3) "(Surg.) The shock or agitation of some organ by a fall or like cause; as a concussion of the brain." The meaning of the word "concussion" is well known, and it was used in this instance in its common and ordinary acceptation, and could not be misleading to the jury. In fact, it was a most appropriate word to describe that phase of plaintiff's injury.

The evidence was also uncontradicted that since his injury plaintiff has been unable to labor, except to

"carry a little wood sometimes," and that he has been unable to concentrate his mind on anything like clerical work.

Where there is evidence tending to prove a fact in the case it is not error to assume in the hypothetical question that such fact exists, and for this reason there is no merit to be found to any of the objections lodged against the hypothetical question propounded to Dr. Ring.

## VI.

The contention of appellant that the action of the trial court was erroneous in refusing to permit Dr. Brokaw to testify as to the extent of plaintiff's injuries and his condition while in the hospital and under his control is equally untenable. The evidence shows Dr. Brokaw had charge of the hospital in which plaintiff was placed shortly after his injury; that he examined him every day or so, because, as he testified, he was responsible for every person who entered the institution for treatment; that his associate and assistant physicians and surgeons, under his supervision, treated and operated upon plaintiff for his injuries. The knowledge thus acquired by Dr. Brokaw of plaintiff's condition falls within the spirit, if not the letter, of the statute which prohibits physicians and surgeons from divulging information acquired by them regarding the ailments of their patients while prescribing for or treating them. The mere fact that Dr. Brokaw did not, in fact, prescribe for or treat plaintiff, in no manner changes the rule, when it is shown that he had charge of the patient through his assistants and that he was being treated by them under his supervision. This identical question came before the court In Banc in the case of Smart v. Kansas City, 208 Mo. 162. It was there held that neither the physician in charge of the hospital, his assistant nor any other physician who

visited the hospital and examined the patients with the permission of those in charge, was a competent witness to testify regarding the information acquired by him by such examination or treatment. The conclusions in that case are adverse to the contention of appellant in the case at bar, and are clearly decisive thereof.

## VII.

It is finally insisted that the verdict is excessive and that a new trial should be granted for that reason.

The evidence discloses that plaintiff sustained internal and external injuries of a permanent character; that his skull was so badly crushed that it was necessary to remove a portion thereof, an inch in width by one and a half inches in length; that his brain is now covered and protected by only the scalp and the soft tissues of the head; that his mind is so affected that he cannot concentrate his attention upon his business; that he has become weak and unable to perform manual labor; that his eyes have been so affected that he is compelled to wear glasses; that he suffered great physical pain and mental anguish; that his head still pains him when he least exerts himself; that he is unable to earn a living; and has incurred a liability of about $300 for necessary medicines and medical treatment. For these injuries the jury awarded the plaintiff the sum of $7,500. When the extent of the injuries and their permanency are considered, we are unwilling to say that the verdict was excessive, but upon the other hand, we are of the opinion that it was very reasonable and is no more than will properly compensate him for the injuries complained of.

We have indicated our views upon the legal propositions disclosed by the record in this cause. The case seems to have been well tried, except for the error

pointed out in paragraph one of this opinion; but for that error the judgment would be affirmed; but if we are to longer recognize the doctrine that, where specific acts of negligence are alleged, the recovery must be predicated upon such averments, we see no escape from the conclusion that instruction numbered 1 given for the plaintiff was erroneous and for that reason the judgment should be reversed and the cause remanded for a new trial. It is so ordered.

All concur.