Ross *v.* CLARK COUNTY.

Opinion delivered January 18, 1932.

*McMillan & McMillan,* for appellant.

*D. H. Crawford* and *J. H. Lookadoo,* for appellee.

MEHAFFY, J.   On October 22, 1930, the appellant, J. B. Ross, filed a claim in the county court of Clark County

for damages to his land and crop, caused by taking land for right-of-way, damage to land other than that taken, and damage to crops, totaling $13,000. The claim was disallowed by the court, and an appeal was taken by Ross to the circuit court, where judgment was rendered in favor of Ross for the sum of $187.50.

Motion for new trial was filed and overruled, and the case is here on appeal.

Prior to filing the claim in the county court, Ross, the appellant, had signed the following agreement, with other landowners:

"We and each of us agree to the following agreement, that if all fences are moved and replaced in the proper place necessary for the protection of our property caused by the building of the said highway at the expense of the county or State, and all houses in or immediately adjacent to the proposed right-of-way are moved at the expense of the State or county and located on the spot of ground selected by the owner, to be a reasonable distance from the present site and from the proposed right-of-way across our property, we will give the right-of-way across our property." (Signed by appellant and others.)

The evidence does not show when this agreement was signed, but the State Highway Commission filed a petition in the Clark County Court for changing and widening State highways, and on September 25, 1930, there was an order of the county court of Clark County granting the petition of the Highway Commission.

It was after the filing of the petition by the Highway Commission and the order of the county court thereon, that the appellant filed his claim in the county court of Clark County asking damages as above mentioned.

The evidence was in conflict as to the market value of the land taken and damaged, and was in conflict as to the amount of damages caused by the construction of the highway. It is not necessary to set out the evidence in this opinion.

The agreement set out above, which was signed by appellant, does not show either the location of the road or the width of the right-of-way donated, and it is impossible to tell from the record what changes were made, if any, through appellant's land, by the order of the county court. This, however, is immaterial. The evidence shows that the right-of-way mentioned in the agreement was to be 100 feet wide. It also shows that the county was to pay all the damages caused by the construction of the road, and that the county was to remove and rebuild the fences, and it is claimed that this was not done.

The evidence that the county agreed to remove and rebuild the fences is undisputed. Ross testifies positively that it was agreed at the time the agreement above set out was signed that the county would build the necessary fences, and, if any damages occurred, the county would pay for them and leave the land in just as good shape as they found it; that it would be necessary to build about one-half mile of fence on both sides. He also testified that it would cost from $100 to $150 to build the fences.

It is true the county judge testified that he made no agreement outside of the written agreement, but he admitted that he had a conversation with Mr. Ross in regard to the matter, and said, if Mr. Ross spoke to him about the fences, he did not have any recollection of it. He therefore does not dispute Ross' testimony, but simply says he does not remember it.

Wells testified that the right-of-way was to be 100 feet. This is not in the written agreement, and he therefore must have made some agreement in addition to what was written. The agreement to donate the land was never carried out.

At the request of the appellee, and over the objections of the appellant, the court gave the following instructions:

"No. 1. If you should find for the plaintiff, the measure of his damages is the fair market value of the

land actually taken for the roadway, other than the amount of land donated by the plaintiff to secure said roadway, plus the damages, if any, to the remaining land of plaintiff not taken, caused by the construction of the new highway, less the benefits to the land, if any, by reason of the construction of the new highway.

"No. 2. You are told that, in arriving at the amount of plaintiff's damages, it is your duty to consider the benefits which have accrued to his land by reason of the construction of the new highway, if you find that the land was benefited thereby, and that you should deduct said benefits, if any, from any damage you may find has been caused to plaintiff's lands by reason of the construction of said highway. And, if you find that the benefits derived equal or exceed the damages, you should find for the defendant Clark County."

These instructions were erroneous, and should not have been given, for the reason that the court told the jury that they could consider the market value of the land taken other than the amount donated, plus damages, if any, to the remaining land, not taken, caused by the construction of the road, less the benefits to the land, if any, by reason of the construction of the highway. The correct measure of damages is the market value of the land taken, including that donated, plus the damages, if any, to plaintiff's land not taken, less the special benefits, if any, by reason of the construction of the highway. In other words, the appellant was entitled to recover the market value of all land taken, and the damage done to land not actually taken, less the special benefits to appellant's land, if any, by reason of the construction of the highway.

The Constitution provides that private property shall not be taken for public use without compensation. It has, however, been settled by the decisions of this court that, in taking private property for public use, the benefits accruing to the owner's land may be taken into account in measuring his damages. *Holt* v. *Crawford County,* 169 Ark. 1069, 277 S. W. 520; *Hempstead County* v. *Huddles-*

*ton,* 182 Ark. 276, 31 S. W. (2d) 300; *Weidemeyer* v. *Little Rock,* 157 Ark. 5, 247 S. W. 62; *Cribbs* v. *Benedict,* 64 Ark. 555, 44 S. W. 707.

The benefits mentioned in the decisions mean special benefits.

This court said: ''The view which seems to us to accord with reason, and which is supported by high authority, is that where the public use for which a portion of a man's land is taken, so enhances the value of the remainder as to make it of greater value than the whole was before the taking, the owner in such case has received just compensation in benefits. And the benefits which will be thus considered must be those which are local, peculiar, and special to the owner's land who has been required to yield a portion *pro bono publico.*'' *Paragould,* v. *Milner,* 114 Ark. 334, 170 S. W. 78.

The State or county or any other agency taking private property for public use has no claim against the owner of such property because the improvement benefited the owner. It is only permitted to set off the benefits against the damages to the owner's land. Where a public improvement is made by assessing benefits against property, of course the benefits may be set off against any damages, but when private property is taken for public use, under power of eminent domain, it must, under the provisions of our Constitution, be paid for. The owner must be compensated for the property taken or damaged, and he is not compensated by benefits which all other landowners receive without any payment therefor. The benefits therefore which may be set off against the damages are special benefits accruing to the land of the particular owner.

To hold that benefits that accrue to all landowners could be set off against the damages would not only be unjust, but it would violate the Constitution which prohibits the taking of private property for public use without compensation. The constitutional provision reads as follows:

"The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated, or damaged for public use without just compensation therefor." Article 2, § 22, of the Constitution.

"And it has been held that the opinions of non-experts who have had an opportunity of special observation are admissible in cases where the facts are stated and are such as to permit a nonexpert to reach an intelligent opinion, and it appears that the opinions derived therefrom are more valuable to the triers than those of scientific men personally unacquainted with the facts. To preclude nonexpert opinion in such cases would be to close a wide and important avenue to the truth." Jones on Evidence, vol. 3, 2294.

The general rule is that the opinion of a witness cannot be given—the witness relating the facts from which the jury form their opinion. The rule, however, is not universal. Where the witness has had the means of personal observation, and the facts and circumstances which lead the mind of a witness to a conclusion are incapable of being detailed or described so as to enable any one but the observer himself to form an intelligent conclusion from them, the witness is often allowed to add his opinion or the conclusion of his own mind. Lawson on Expert and Opinion Evidence, 2d ed. 509; *Fort* v. *State,* 52 Ark. 180, 11 S. W. 959; *Galveston H. & S. A. Ry. Co.* v. *Daniels,* 9 Tex. Civ. App. 253, 28 S. W. 548; *McLeod* v. *Lee,* 17 Nev. 103, 28 Pac. 124; 22 C. J. 531-561.

If there were crops growing on the land at the time it was taken or damaged, it would of course be proper to take into consideration the value of the crops destroyed or damaged.

We have not discussed the instructions requested because in another trial of the case the parties will be governed as to the measure of damages by the rule above announced.

The judgment of the circuit court is reversed, and the cause remanded for a new trial.