FORT SMITH COTTON OIL COMPANY v. SWIFT & COMPANY.

4-5292                                                   124 S. W. 2d 1

Opinion delivered January 23, 1939.

*Hardin & Barton,* for appellant.

*J. W. Jamison, Warner & Warner* and *Hill, Fitzhugh & Brizzolara,* for appellees.

McHANEY, J. Appellants, Lillard and Dunklin, are partners doing business under the firm name of Fort Smith Cotton Oil Company and will be hereinafter referred to as appellants. On January 25, 1936, pursuant to a contract of sale and purchase between appellants

and appellee, Swift & Company, the former loaded, at its cotton seed oil mill in Fort Smith, a tank car with cotton seed oil, which tank car was furnished for the purpose by the latter. After being loaded by appellants it was delivered to the Missouri Pacific Railroad Company to be switched to the connection with the appellee, St. Louis-San Francisco Railway Company, which latter company accepted delivery the same day and undertoook to and did transport same to Swift & Company in Chicago. It was shipped by appellants under standard form of bill of lading, which shows it was "Shippers Order," with notice to Swift & Company. It was indorsed by appellants and attached to a draft on Swift & Company which draft was paid on presentation. When the car arrived it was found to be short a net amount of 6,700 pounds, due to a leakage in transit and demand was made on appellants and appellee railway company to make good the loss to it which was stipulated by all parties to be $620.40. Payment being refused, Swift & Company sued appellants and the railway company. Trial resulted in a verdict and judgment for Swift & Company as against appellants, but in favor of the railway company on the suit against it. From the judgment against them an appeal is prosecuted by appellants, as against Swift & Company only, and there is an appeal by Swift & Company from the judgment in favor of the railway company.

In addition to the facts above stated, it was also stipulated that while said car of oil was in transit a leakage was discovered in said car at Fayette Junction and traced back to Greenland, Arkansas, only 55 miles from Fort Smith; that the leak was stopped at Fayette Junction and the car was transported on to Chicago and delivered to Swift & Company who paid the purchase price therefor and the freight thereon without knowledge of the loss of 6,700 pounds of oil therefrom. As we understand this stipulation, the leak of the oil began at Greenland, some few miles south of Fayette Junction, and was discovered and stopped at the latter place.

It appears from the record, undisputed, that tank cars are large cylindrical tanks, varying in size from 75 to 85 inches in diameter and from 25 to 30 feet long,

on railroad trucks; that they are loaded through the dome at the top in the middle of the tank; that the dome opening is closed by a cap about 15 inches in diameter which screws down over the opening, with two knobs on it which are used in tightening it with a wrench or bar. Inside the dome there is a handle working on a bracket, attached to a rod which extends to a hole in the bottom of the tank, to the bottom end of which is attached a valve which fits securely in said hole, and operates to open and close the hole by use of the handle in the dome. This rod is called the valve stem. To the opening in the bottom of the tank is attached an outlet pipe, about two feet long, and four or five inches in diameter. It is threaded at the outer end and is used in unloading the tank by screwing onto it a hose or another pipe and opening the valve by use of the handle in the dome. There is also a cap which screws on the end of the outlet pipe, called the outlet cap. It is attached to a chain which prevents its loss when unscrewed from the outlet pipe.

The evidence shows that the proper method of loading a tank car is to remove the outlet cap from the outlet pipe and then close the valve by means of the handle in the dome. If the valve is properly seated, there can be no leak. The tank is then loaded. If there is a leak in the valve, it will drain through the outlet pipe with the cap off, and the valve should be reseated to stop it. If there is no leak, then the cap is tightly screwed on to the outlet pipe with a wrench. This system is adopted to be sure there is no leak in the valve which would not immediately be ascertainable with the outlet cap screwed on, or at all if the cap stayed in place.

For a reversal of the judgment against them, appellants first contend that certain evidence on the part of the railway company and certain rebuttal evidence on behalf of Swift & Company was improperly admitted over their objections. This evidence relates largely to the proper manner or method of loading a tank car with oil and was substantially as outlined above. We think the evidence was competent and proper under the rules announced in *Blanton* v. *Missouri Pac. Rd. Co.*, 182 Ark. 543, 31 S. W. 2d 947, and *Ross* v. *Clark Co.*, 185 Ark. 1, 45

S. W. 2d 31. Moreover, we cannot consider alleged errors in the evidence introduced by the railway company, as there has been no appeal by appellant as to it.

At the conclusion of the evidence on behalf of appellee, Swift & Company, consisting of the stipulation above referred to and the uniform bill of lading, appellants moved for a directed verdict in their favor, which was denied over their objections and exceptions, and this forms the basis of the second assignment of error for a reversal of the judgment. The record discloses that the railway company made a similar motion which was denied. Thereupon it introduced evidence sufficient to take the case to the jury on the question of its liability. This evidence consisted of inspections made by the Missouri Pacific, when the car was switched to appellee, railway company; by Mr. Reeves, car inspector for the latter, shortly after it was switched and again when the train was made up in which this car traveled about 8:30 p. m. of the same date; by some of the train crew at Van Buren, six miles out of Fort Smith; by brakemen Jacques and Faust at Chester, 23 miles from Van Buren; and it was again inspected at Winslow, 11 miles north of Chester. No leak was discovered at any of these inspections. The next stop was at Fayette Junction, where the leak was discovered. The cap was off the outlet pipe and was hanging loose on the chain. Brakeman Jacques went to the roundhouse, got the hostler, Mr. Gibson, to come and stop the leak. Gibson found the dome cap screwed tightly down in place, applied his wrench to it, took it off and found the valve wide open, with the handle to the valve stem pushed upon the bracket, holding the valve open. He closed it by pushing the handle down off the bracket and immediately stopped the leak. The dome cap was replaced and the outlet cap screwed up tightly with a wrench. He found the gasket on the outlet pipe in good condition and there were no defects in the valve, but it had been left open, and when closed no more oil leaked out. At the conclusion of the evidence on behalf of the railway company, and after appellee, Swift & Company, had offered a witness in rebuttal, appellants again moved for a directed verdict which was denied. They

then put on their testimony which tended to show that the car was properly loaded and that no negligence occurred in loading. They then renewed their motion for a directed verdict which was denied.

It will be noticed that neither appellants nor the railway company stood upon their motions for directed verdicts, but went ahead and put on their testimony. In doing so, appellants waived their requests made prior to the conclusion of the evidence. The rule in this regard is well stated in *Grooms* v. *Neff Harness Co.*, 79 Ark. 401, 96 S. W. 135, on rehearing, p. 407, 96 S. W. 132 as follows: "After verdict the only method of challenging the sufficiency of the evidence is to assign in the motion for new trial, as ground therefor, that 'the verdict is not sustained by sufficient evidence.' On appeal this raises that question, and in testing the sufficiency of evidence the court must consider all the evidence, whether introduced by the plaintiff or by the defendant. So, in testing the correctness of the ruling in denying a request for peremptory instruction, regardless of the time when the request is made, this court must look to all the testimony introduced, and will not reverse the case on account of the trial court's refusal to give the request, even though the evidence was insufficient at the time the request was made, if upon the whole case there is sufficient to sustain the verdict."

So, appellants are in no position to insist now that the court erred in refusing to direct a verdict for it, if all the evidence, for all parties, makes a question for the jury.

It is next insisted that the evidence is insufficient to sustain the verdict. We cannot agree. The evidence shows that the car was delivered to appellants in good order; that they had exclusive charge of loading it; that it was delivered to the Missouri Pacific Railroad Company in good order, no leak; that it was frequently inspected by appellee railway company, at every stop, over a distance of about 60 miles, when the leak was discovered at Fayette Junction and that the same train crew traced the leakage back the next day on the return trip and found it began at or between Greenland and Fayette Junction.

The inspections made consisted of flashing a light on the dome cap to see if it was screwed down and on the outlet pipe to see that the cap was on and that there was no leak. No duty rested upon the railway company to make any more minute inspection. It was not required, in the absence of a leak at the outlet pipe, to go upon top of the tank and remove the dome cap to see if the valve was properly seated. Witnesses for appellants testified the car was properly loaded, the valve properly seated and the dome and outlet caps properly screwed down.

There was evidence to the effect that the outlet pipe cap is not intended to hold the lading, but is intended to protect the threads on the pipe to which is attached another instrumentality in unloading. Also, that these caps often come loose and drop off the outlet pipe, caused by the vibration of running freight trains.

Under these facts a question was undoubtedly made for the jury as to whether appellants or the railway company was at fault, and we are, therefore, of the opinion that the evidence was sufficient to support the verdict.

Error is, also, assigned on account of the giving and refusal to give numerous instructions, one of which is No. 3, given as follows: "You are instructed that the plaintiff is entitled to recover herein said amount of $620.40, and it is your duty to find a verdict against both or either of the defendants, as the facts warrant, for one or both of them are liable as defined by other instructions in this case."

We think this a correct declaration, and we do not understand that appellants question it, except in connection with certain instructions given at the request of the railway company. While we doubt the right of appellants to question the instructions given at the request of their co-defendant, the railway company, since appellee, Swift & Company, was not interested in the controversy as between them and since there has been no appeal by appellants against the railway company, see *Beave* v. *St. Louis Transit Co.*, 212 Mo. 331, 111 S. W. 52, and *Barr* v. *Nafziger Baking Co.*, 382 Mo. 423, 41 S. W. 2d 559, still we have carefully examined the questioned instructions and find them not subject to the criticism made.

We have also examined appellant's requested instructions which were refused and find that the court properly refused them. We do not set out all these instructions and requested instructions, as to do so would unduly extend this opinion to no useful purpose. Suffice it to say that the court fully and fairly instructed the jury on the issues. This disposes of the appeal of Swift & Company against the railway company.

The judgment is affirmed.