ANN MARRIOTT, Respondent, v. MISSOURI PACIFIC RAILWAY CO., Appellant.

Kansas City Court of Appeals, February 7, 1910.

1. **PERSONAL INJURY: Crossing: Flagman.** A passenger train in railway yards in a city backed over a crossing with another railway track, to leave a sleeping car on a side track. After doing so, it came forward approaching the same crossing. A flagman, who was agent of both railways, was at the crossing and did not give the signal to cross. The engineer testified that he thought he did, and attempted to cross, when a freight train on the other track collided with the rear passenger coach, injuring a passenger. *Held*, that if the engineer did not get the signal he was negligent in attempting to cross; and whether he did get it was a question of fact for the jury.

2. **NEGLIGENCE: Pleading: Instructions.** Whether an allegation that defendant "carelessly and negligently operated and ran its train in which plaintiff was riding as a passenger," is a general or specific allegation of negligence, is not decided. But where the instructions are drawn in the substantial language of the petition, there is no ground for stating that they allow the jury to go beyond the limits of the negligence charged. Cases distinguished.

3. ————: **Excessive Verdict: Remittitur.** Under the evidence as to the effect of plaintiff's injury, it is held that a verdict of $5,000 is excessive, and $2,500 is directed to be remitted.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman*, Judge.

AFFIRMED CONDITIONALLY.

*Ben J. Woodson* and *Martin L. Clardy* for appellant.

*Brewster, Ferrell & Mayer* for respondent.

ELLISON, J.—This is an action for personal injury received by plaintiff in a collision between one of defendant's trains on which she was a passenger, in company with her husband, and a freight train belonging to the Chicago, Burlington & Quincy Railroad Company. She recovered judgment in the trial court. The Chicago, Burlington & Quincy Railroad was made a joint defendant, but at the close of the evidence a demurrer in its behalf was sustained. Plaintiff's husband was also injured and afterwards died, it is claimed from the effect of the injury, and plaintiff, as his widow, recovered judgment for his death in the sum of seven thousand dollars.

The collision occurred at a crossing of tracks in the city of St. Joseph. The position of the various tracks and streets at and near the scene have been particularly and clearly pointed out to us by counsel. It seems that the defendant had backed its train a short distance west onto terminal tracks for the purpose of leaving a sleeping car and that to do this it was necessary to cross the track of the Chicago, Burlington & Quincy. After detaching the sleeper defendant's train then moved forward, east, again crossing the other company's track and in doing so, the latter's freight train ran into defendant's rear coach, in which plaintiff and her husband were seated. It appears that a flagman is kept at the crossing and that he is the agent of both railway companies for the purpose of flagging trains. That it is the duty of each engineer to await a signal from this flagman before moving over the crossing. The engineer of the defendant's train, claim-

ing that he received a signal to cross and not observing the other train, it being then out of view on account of buildings, attempted to move over. He got over with the engine, when the brakeman gave him a "violent" signal and the fireman, seeing the other train, called to him. He then pulled the "throttle wide open" in order to clear the crossing before the other got to it, but the rear car did not get over in time and the result was the collision, which wrecked the passenger coach and injured plaintiff and her husband. But there was other evidence in the case which tended to show the engineer of defendant's train to have been guilty of negligence. There was evidence that no signal was given to him to make the crossing and that it was his duty to await such signal. The flagman was the agent of both railway companies and if he, standing at the crossing, did not signal defendant's engineer, the latter was manifestly guilty of negligence. And since the attempt to cross without a signal was an immediate cause of the collision, it was the proximate cause of the injury.

We therefore conclude, with the trial court, that the demurrer to the evidence was not well taken.

It is next insisted that there was substantial error in instructions given for plaintiff. This complaint is based on the assumption that the petition charges specific negligence as the cause of the injury, and that the instructions were of such breadth as to permit the jury to go outside such specifications in making up a verdict. Plaintiff contends that the charge she makes in her petition is general negligence and hence the criticism on the instructions is not well made; but that, however it may be interpreted, the instructions were in fact no broader than the charge, and therefore the criticism again is without support.

The petition alleges that defendant "carelessly and negligently operated and ran its train in which plaintiff was riding as a passenger" so that the collision

occurred. This charge is more specific than that in Price v. Met. St. Ry. Co., 220 Mo. 435, and Loftus v. Met. St. Ry. Co., 220 Mo. 470, cited by plaintiff. In those cases the charge is simply that the collision was occasioned by the railway's negligence, the words being that the railway "carelessly and negligently caused and permitted the train" to collide, etc., thus in no way naming or limiting the negligence; whereas in this case the negligence is confined to the operation and running of the train. We need not say whether that is what should be called a charge of specific or general negligence. It may be said to be a general charge of negligence in doing a specific thing. However that may be, the instructions complained of by defendant are within the limits of the petition, for they restrict the negligence and want of care of defendant's servants to "the management and control of said passenger train and coach." When we consider the evidence going to make out and sustain plaintiff's cause of action, there is seen to be no practical difference between operating and running a train as charged in the petition and in managing and controlling such train as submitted in the instruction.

Defendant cites us to Beave v. Transit Co., 212 Mo. 331, but we think it not applicable. For in that case there were several specific acts of negligence enumerated in the petition, yet the instruction there condemned was as broad as could be drawn and thereby allowed the jury to go outside or beyond the limits of the matters specified. In that case the instruction was greatly broader than the petition, while in this case it is the counterpart of the petition.

The further objection to the judgment is that it is entered on a verdict for an excessive amount. We think the objection is well taken. The verdict was for five thousand dollars. Plaintiff's injuries did not justify so large a sum within the limits the law necessarily attaches in such cases. It would doubtless be thought by the

great majority of persons that they would not undergo certain suffering, or injury, for *any* amount of money and in that sense *no* amount allowed would be excessive. But in legal contemplation that would be an improper mode of making up a verdict. Plaintiff, who was fifty-eight years old, suffered a fracture of two ribs and a small contusion on the forehead. She has had pains in her back and stomach. Her urine has been "scant at times." A physician testified that he "diagnosed her case as a dislocated kidney." It appears that she came to this State just before her injury from Utah, where she lives. When injured she was assisted out of the car to a cab and driven to the house of a relative in St. Joseph. Her physician saw her twice a day for four days (18th, date of injury, to 22nd September, 1907). On the latter day she was taken in a day coach, sitting on an ordinary car seat, on a train, to a town distant about twenty miles, where she remained about three weeks, when she returned to Utah with her husband. She was in bed a week after getting back and had a doctor two or three times. In May of the following spring she returned to St. Joseph and sat in the court room several days in June at the time of the trial of this case. It also appeared that she was injured in a railroad collision near Salt Lake City in the winter preceding the injury involved here and was hurt in the same side that she was in this collision, though she says she got over that. She claimed damages of the railway and settled for thirty-eight dollars.

In our opinion the judgment should be reversed and the cause remanded unless plaintiff will enter a *remittitur* within fifteen days for twenty-five hundred dollars. If that is done, the judgment will be affirmed. All concur.